Charles A. SULLIVAN and Katharine R. Sullivan, Appellants,

v.

Martin F. MALARKEY, Elizabeth K. Malarkey, and Samuel P. Pardoe, Appellees.

No. 12562.

District of Columbia Court of Appeals.

Argued Feb. 8, 1978.
Decided Oct. 19, 1978.

---

Courts Oulahan, Washington, D. C., for appellants.

Whayne S. Quin, Washington, D. C., with whom C. Francis Murphy, Washington, D. C., was on brief, for appellees.

Before NEBEKER, HARRIS and FERREN, Associate Judges.

HARRIS, Associate Judge:

This appeal arises from a dispute regarding title to a four-foot strip of land. We affirm the rulings appealed from, but remand the case for one limited purpose.

I

In 1967, appellants Charles and Katharine Sullivan (hereinafter the Sullivans) and appellees Martin and Elizabeth Malarkey (hereinafter the Malarkeys) purchased adjoining properties in Georgetown. In October 1975, the Malarkeys sold the western 52 feet of their property to appellee Pardoe. To effectuate the sale, the Malarkeys secured a Plat of Subdivision dated March 12, 1976. In accordance with that plat, the Malarkey property was subdivided into Lots

285–286 (Pardoe) and Lot 287 (Malarkey). Immediately adjacent to the western edge of Lot 285 is a strip of land, not quite two feet wide, which runs along the Sullivans' property for a distance of approximately 80 feet. This strip was not included in the subdivided Lot 285. The Sullivans claim title by adverse possession to both that two-foot strip and to the contiguous westerly two feet of Lot 285.

The Sullivans filed suit seeking: (1) the quieting of title obtained by adverse possession, see D.C.Code 1973, § 16–3301; (2) ejectment of appellees from the land, see id., § 16–1101 et seq.; (3) recovery of mesne profits and damages, see id., § 16–1109; and (4) a declaration that the subdivision obtained by the Malarkeys was null and void.

The Sullivans filed a motion for a temporary restraining order seeking to prevent the Malarkeys and Pardoe from (1) tearing down a brick wall and a fence to the east of Sullivans' garden (i. e., on the western side of property purchased by Pardoe), (2) exercising any further rights of ownership over land belonging to the Sullivans, and (3) proceeding with any construction or excavation work on land adjacent to the Sullivans'.

At the hearing on the Sullivans' motion, counsel for the Malarkeys advised the court that his clients had no wish to engage in prolonged litigation over the disputed narrow strip of land. The Malarkeys' counsel offered to consent to a judgment against them, and orally submitted a proposed consent decree declaring title to the strip to be held by the Sullivans, and correcting the subdivision records to exclude the disputed two feet reflected in Lot 285. The court engaged the Sullivans' counsel in a discussion on the Malarkeys' offer to confess judgment. Counsel's position was that the

offer would satisfactorily dispose of the issue concerning the illegality of the subdivision but would not terminate the Sullivans' claim for mesne profits and damages. Following further discussion on the issue of damages, the hearing was recessed and reconvened two days later. Counsel for the Sullivans then reported that his clients, in their effort to resolve the dispute, had attempted to purchase the property sold by the Malarkeys to Pardoe, but that this attempt was unsuccessful. The Sullivans' counsel then submitted a written proposed "Consent Decree and Judgment" which provided that title to the disputed strip would vest in the Sullivans. However, that proposed order made no provision for an attendant correction of the subdivision records of the District of Columbia.[1]

The court denied the Sullivans' request for a temporary restraining order, and ordered, based on the Malarkeys' offer to confess judgment, that title to the disputed strip of land would vest in the Sullivans. Additionally, the court ordered an adjustment of the land records of the Surveyor of the District of Columbia to exclude what had been reflected as the westerly two feet of Lot 285. The court directed that its order would constitute a final judgment as to Counts I, II, and IV of the Sullivans' complaint, but that it would not prejudice Count III thereof (in which mesne profits and damages were claimed).

On appeal the Sullivans raise the following allegations of error: (1) the Judge in Chambers exceeded his jurisdiction under Super.Ct.Civ.R. 12–I(b) by refusing to consider the Sullivans' motion for a preliminary injunction, and by proceeding to dispose of the case on the merits even though the Malarkeys had not filed an answer to

---

1. Counsel for the Sullivans took the position that because correction of the subdivision records would adversely affect related litigation also pending in the Superior Court ("Q" Street Preservation Committee and Katharine Sullivan v. District of Columbia, Martin F. Malarkey, Elizabeth K. Malarkey, Samuel P. Pardoe, et al., Civil Action No. 3515–'77) he could not recommend that his clients consent to the correction. The Sullivans' objection to the correc-

tion of the subdivision records properly was disregarded by the trial court. In order to resolve the Sullivans' demands in a manner favorable to them, it was appropriate for the court to order a concomitant correction of the subdivision records. Counsel for the Sullivans could not consistently agree to the vesting of title to the disputed strip in his clients while at the same time objecting to a correction of the subdivision records.

the Sullivans' complaint; and (2) the judge violated Super.Ct.Civ.R. 52(a) and 58 by basing his judgment solely on the proposed findings of fact and conclusions of law which were submitted by the Malarkeys' counsel. These contentions are without merit.

## II

■ Super.Ct.Civ.R. 68–I(d) permits the court to enter judgment by confession following the submission by the parties of a request for the entry of such a judgment. At the initial hearing on the temporary restraining order, counsel for the Malarkeys made such a request. It was appropriate for the court to consider that request at the time it was made. The court ordered a continuance so that the parties might seek to resolve their differences, and then allowed both sides ample opportunity to express their views on the entry of a judgment by confession. The record does not reflect that counsel for the Sullivans objected to this course of conduct.

⬛ Super.Ct.Civ.R. 12–I(b) provides for the disposition of certain matters by the Judge in Chambers. Specifically mentioned in that rule are motions for temporary restraining orders. The rule also states that the Judge in Chambers may deal with "any other matters appropriate for such disposition." While it would be beyond the scope of the rule for the Judge in Chambers to reach a determination on the merits of a case by resolving disputed factual questions, we see no reason why the judge may not consider and dispose of a request for the entry of a judgment by confession.

2. We also reject the Sullivans' assertion that the court exceeded its jurisdiction under Super. Ct.Civ.R. 12–I(b) by declining to consider the merits of the Sullivans' request for a preliminary injunction. In their motion captioned "Motion for Temporary Restraining Order," the Sullivans included this paragraph:

A hearing on preliminary injunction in this case is requested to be set. Once the matter of a temporary restraining order has been disposed of, this motion should be considered as one for preliminary injunction.

■ We also are not persuaded by the Sullivans' assertion that the entry of judgment was inappropriate because the Malarkeys had not filed an answer to the complaint. Initially, the Sullivans raised no objection in the trial court to this procedure. Moreover, "[s]ince by its nature an agreement to confess judgment obviates the necessity for a formal commencement of action, and dispenses with the necessity of service and a regular trial of issues," 6A Moore's Federal Practice § 58.09, at 354 (2d ed. 1974) (footnote omitted), the filing of a formal answer is not a prerequisite to the entry of such a judgment. *Cf. In re Estate of Himmelfarb*, D.C.App., 345 A.2d 477, 482 (1975). ("In appropriate circumstances, a judgment entered by consent can have the same res judicata effect as a judgment entered after answer and trial.") "An authorization to confess judgment is in fact a waiver of the provisions of the Rules governing commencement, service of process and trial." 6A Moore's, *supra*, at 356–57 (footnotes omitted).[2]

## III

We also decline to overturn the trial court's judgment on the basis of the second claim raised on appeal, *i. e.*, an alleged violation of Super.Ct.Civ.R. 52(a) and 58. Rule 52(a) provides that, unless expressly waived by all parties, the court shall enter findings of fact and conclusions of law in every action tried without a jury. The record reflects that findings of fact and conclusions of law were entered by the court. It is true, as is frequently done, that proposed findings and conclusions were prepared and submitted by counsel for the Malarkeys. The trial judge reviewed that submission, injected a grammatical correction,

No Points and Authorities were filed in support of the request for a preliminary injunction. The court chose to treat the pleading solely as a request for a temporary restraining order. Since the request for a preliminary injunction did not comply with the recommended format for motions specified in Super.Ct.Civ.R. 12–I(d) and (e), we cannot say that the court abused its discretion in ruling that a motion for a preliminary injunction had not been properly filed.

and affixed his signature to the submitted document. Rule 58 provides for the entry of judgment by the court. The rule admonishes that "[a]ttorneys shall not submit forms of judgment except upon direction of the court, and these directions shall not be given as a matter of course." The Sullivans assert that this provision was violated when the court requested counsel for the Malarkeys to prepare the judgment and proposed findings and conclusions, and then adopted those as its own.

While our standard of review properly should be more strict when the court adopts verbatim the findings proposed by one party, *see In re Las Colinas, Inc.*, 426 F.2d 1005, 1010 (1st Cir. 1970), *cert. denied*, 405 U.S. 1067, 92 S.Ct. 1502, 31 L.Ed.2d 797 (1972), the essential consideration on review is whether the court's findings and conclusions ultimately represent the judge's own determinations. *Id.*, at 1008–09. A close review of the record satisfies us that the trial judge thoroughly discussed the ramifications of his order with counsel for both parties prior to the entry of judgment, and that he made an independent evaluation of the proposed findings and conclusions which were submitted by counsel for the Malarkeys. The court's ultimate decision was a reflection of its independent evaluation of the issues, and there was no violation of either the letter or the spirit of the rules.

### IV

The Sullivans raise one additional claim. They assert that the May 20, 1977, Plat of Survey (which voided an incorrect 1975 Plat of Survey) also is inaccurate in that it extends the western portion of what is now appellee Pardoe's property an additional two feet. A comparison of the 1975 plat and the 1977 plat indicates that the Sullivans are incorrect in this assertion. However, the 1977 Plat of Survey does contain one flaw which should be corrected. The now-void 1975 Plat of Survey was inaccurate in that it showed that the Malarkeys owned 172 feet of land along Q Street,

N.W., which is contrary to the metes and bounds description in the 1967 deed of title which granted the Malarkeys only 170 feet. Our reading of the record indicates that this controversy was resolved by the judgment under review. Although the 1977 Plat of Survey still reads 172 feet along Q Street, in actuality the overall property now owned severally by the Malarkeys and Pardoe (after the sale of the portion thereof to Pardoe which sparked the Sullivans' opposition) consists of the 170 feet originally deeded (minus the two feet awarded to the Sullivans by adverse possession). The Sullivans contend that the 1977 Plat of Survey compounded the original error by extending the Malarkeys' property to 174 feet. They claim that although the 1977 survey continued to read 172 feet, the western boundary of the Malarkeys' original property (as measured from two markers, namely, a "Nail in Tree Root on Extension" and a brick wall) had in fact improperly been moved west an additional two feet. The end result of this error, they assert, was that the Plat of Survey continued to read 172 feet, but the amount of property granted to the Malarkeys on the plat measured 174 feet. Our reading of the record persuades us that this argument is without merit. The only discrepancy in the 1977 plat which must be corrected is that the overall footage along Q Street must be adjusted to read 170 feet. This problem, however, was not brought clearly to the attention of the trial court. We therefore conclude that while the court's approach was correct and the Sullivans received by consent the relief they had been seeking (other than in Count III of their complaint), the case must be remanded to the trial court with instructions to conform the 1977 Plat of Survey to the judgment which had been entered.[3]

Accordingly, the decision of the Judge in Chambers is affirmed, and the case is remanded for limited further proceedings consistent with this opinion.

---

3. Should similar discrepancies in any other relevant documents be brought to the attention of the trial court, we assume that the court will make the requisite adjustments.