Ruth Myrtle CRAVEN, et al., Appellants,

v.

Marie M. ELMO, et al., Appellees,

Herbert W. Bray, Intervenor.

No. 80–255.

District of Columbia Court of Appeals.

Submitted Jan. 5, 1982.

Decided March 12, 1982.

Thomas H. Queen, and Sharon E. Jones of Queen & Smith, Washington, D.C., were on brief for appellants.

Samuel Intrater, Washington, D. C., entered an appearance for appellees. No brief was filed on behalf of appellees.

Lawrence D. Hunstman, Washington, D. C., entered an appearance for intervenor. No brief was filed on behalf of intervenor.

Before KELLY and MACK, Associate Judges, and GALLAGHER, Associate Judge, Retired.

KELLY, Associate Judge:

We decide in this appeal whether a motions judge erred in denying appellant/trustee's Petition to Set Aside the Order Nisi Sale and to Declare the Forfeiture of the [Order Nisi Purchaser's] Deposit, when the intervenor/purchaser refused to proceed with the sale of property until all housing code violations on the premises had been corrected despite a provision of the contract which expressly stated that the property was to be sold "as is." We conclude that the judge did so err and reverse.

I

On June 8, 1976, a complaint was filed in Superior Court seeking partition and sale of premises located at 106 10th Street, S.E., and 900 44th Street, N.E., in the District of Columbia. The two properties had been the corpus of an educational trust established by Sallie Maria Madden which had terminated according to its terms. On January 19, 1977, the court appointed Carlisle E.

Pratt as trustee to sell the property, pursuant to Super.Ct.Civ.R. 308(c).

In April of 1977, Pratt submitted to the court a Report of Offers of Sale of the subject properties. On May 20, 1977, an Order Finally Ratifying Sales of Real Estate was entered, in which the court ratified the proposed sale of 106 10th Street, S.E., and disallowed the proposed sale of 900 44th Street, N.E., because of a higher offer made by Herbert W. Bray, intervenor in this action. An order ratifying the sale to Bray provided that the sale was not subject to a broker's commission and that the property was to be sold in "as is" condition.

The contract of sale between Bray and Pratt, as trustee, executed on May 18, 1977, on a pre-printed standard form contract, provided for a sale price of $18,500 in cash, and a good faith deposit of $2,000, also in cash. Although a pre-printed clause of the contract required that the seller remedy all municipal violations existing on the premises before settlement, the parties typed in the provision that the property was to be sold in "as is" condition. The contract further provided that settlement was to be within sixty days from the date of the seller's acceptance of the contract and that the $2,000 deposit was to be forfeited, at the option of the seller, in the event that the purchaser failed to make full settlement.

Settlement was mutually delayed for several months to allow the trustee to terminate an existing tenancy on the premises. In February of 1978, Thomas H. Queen was appointed successor trustee to sell the property.[1] Soon thereafter, Queen was informed by Bray's attorney that Bray would not proceed with the sale until all outstanding housing code violations on the premises were corrected.[2] On October 19, 1978, the successor trustee filed a Petition to Set Aside the Order Nisi Sale and to Declare the Forfeiture of the Deposit. In the petition, the trustee asked the court to set aside the order ratifying the sale to Bray and to declare the $2,000 deposit forfeited since Bray was refusing to proceed with the sale until all housing code violations had been corrected even though the contract of sale, as well as the court order ratifying the sale, expressly provided for the sale of the property in "as is" condition.

A hearing was held on the petition on April 17, 1979, but only Bray was present. The court construed the successor trustee's petition as a motion for relief from judgment and accordingly ruled that the petition had not been timely filed. On May 2, 1979, the successor trustee filed a motion for reconsideration which, on January 22, 1980, was likewise denied. The successor trustee duly noted this appeal of the orders denying his petition and motion for reconsideration.

## II

Appellant contends that the court erred in denying his Petition to Set Aside the Order Nisi Sale and to Declare the Forfeiture of the Deposit. Specifically, he asserts that the motions judge (1) incorrectly construed his petition as a Super.Ct.Civ.R. 60(b) motion for relief from the order of May 20, 1977, ratifying the sale of the property when he ruled that the petition was not timely filed; and (2) erred in denying his petition on the merits because Bray's refusal to proceed with the sale until all existing housing code violations had been remedied was not a valid reason to delay settlement under the terms of the contract of sale. Both contentions are valid; consequently, we reverse.

■ Appellant filed a "Petition to Set Aside the Order Nisi Sale and to Declare the Forfeiture of the Deposit." The motions judge apparently treated this petition as a Rule 60(b) motion because it contained

---

1. Carlisle E. Pratt had been sworn in as an Associate Judge of the Superior Court in January of 1978.

2. An inspection by the D.C. Department of Housing and Community Development during the period when the trustee was attempting to terminate the existing tenancy had revealed numerous housing code violations.

the words "to set aside the order nisi sale," and ruled that the petition had not been timely filed. This was error. The nature of a motion is determined by the relief sought and not by its label or caption. *Coleman v. Lee Washington Hauling Co.,* D.C.App., 388 A.2d 44, 46 (1978); *Graves v. Nationwide Mutual Insurance Co.,* D.C. Mun.App., 151 A.2d 258, 260 (1959). A cursory reading of appellant's petition makes it clear that it was not a motion for relief from judgment.

A Rule 60(b) motion asks the court to set aside a judgment or order on various grounds. *See* Super.Ct.Civ.R. 60(b). It does not seek to enforce the judgment from which the party is seeking relief. Appellant's petition asked the court to declare a forfeiture of the $2,000 good faith deposit pursuant to a provision of the contract of sale; the petition sought enforcement of the clause of the contract of sale which called for the forfeiture of the deposit if the purchaser failed to make full settlement. Since it is plain that appellant was not seeking *relief* from the May 20, 1977 order, the petition could not properly be characterized as a motion for relief from judgment. Thus, the trial court erred in ruling that appellant's petition had been untimely filed.

The petition not only should have been considered by the motions judge on the merits, it also should have been granted. Appellant alleged that despite the fact that the contract called for the sale of the property in "as is" condition, Bray refused to settle until appellant had remedied all existing housing code violations. Bray asserted in his answer to the petition that the "as is" clause did not apply to housing code violations because a pre-printed clause of the contract provided that

(9) All notices of violations of Municipal orders or requirements noted or issued by any Department of the District of Columbia, or prosecutions in any of the courts of the District of Columbia on account thereof against or affecting the property at the date of settlement of this contract shall be complied with by the seller and the property conveyed free thereof, with the exception of the means of egress regulations. This provision shall survive the delivery of the deed hereunder.

It is a fundamental principle of contract law that when there is a conflict between a printed clause of a contract and a provision inserted by the parties especially for the particular transaction, the printed clause must yield to the insertion. *Hagan v. Scottish Union & National Insurance Co.,* 186 U.S. 423, 426, 22 S.Ct. 862, 863, 46 L.Ed. 1229 (1902); *Flack v. Laster,* D.C.App., 417 A.2d 393, 398 (1980); *McReynolds v. Mortgage & Acceptance Corp.,* 56 App.D.C. 342, 343, 13 F.2d 313, 314 (1926). *See also* 3 CORBIN, CONTRACTS § 548 (1963); 4 WILLISTON ON CONTRACTS § 622 (3d ed. 1961). Here, there was such a conflict. The preprinted clause of the contract provided that the seller was to comply with all notices of housing code violations before conveying the property, while the parties typed into the contract an inconsistent provision that the property was to be sold "as is." That "as is" clause is controlling since it was expressly inserted by the parties. *Flack v. Laster, supra.* Thus, it is plain from the language of the contract itself, as well as the ratification and confirmation of the contract of sale by the court on May 20, 1977, that the property was intended to be sold "as is," thereby relieving appellant of any contractual obligation to remedy the housing code violations which existed before settlement. Bray was required to proceed to settlement regardless of any housing code violations or to forfeit his $2,000 deposit.

We hold that the typewritten clause of the contract which expressly provided that the property was to be sold "as is" was controlling and that Bray breached the contract of sale by refusing to go to settlement until appellant remedied any alleged housing code violations. Consequently, appellant was entitled to have the order of sale vacated and to the forfeiture of Bray's $2,000 deposit.

*Reversed.*