**Pauline SACKS, et al., Appellants,**

**v.**

**Herbert ROTHBERG, Appellee.**

**No. 88–111.**

District of Columbia Court of Appeals.

Argued Sept. 21, 1989.

Decided Jan. 24, 1990.

See also, D.C.Cir., 845 F.2d 1098.

---

Joseph A. Artabane, Washington, D.C., for appellants.

Robert Plotkin, with whom Robert E. Pokusa, Washington, D.C., was on the brief, for appellee.

Before ROGERS, Chief Judge and SCHWELB and FARRELL, Associate Judges.

ROGERS, Chief Judge:

Appellant Pauline Sacks and Marvin Sacks appeal from the involuntary dismissal pursuant to Super.Ct.Civ.R. 41(b) of their lawsuit against appellee Herbert Rothberg based on a Settlement Agreement and Promissory Note. The principal issues before the trial court concerned the anniversary date of the Note and the terms for prepayment of the Note, specifically whether appellee defaulted on the Note when he paid $4,250 on April 5, 1984, instead of $6,750, and whether the $178,800 tendered by appellee in April 1987 was sufficient to prepay the remainder of the $1,560,000 Note. Appellants contend on appeal that the trial judge erred in finding that appellee had not defaulted on April 5, 1984, since the parties intended April 15 and not April 5 to be the anniversary date of the Note. They also contend that the judge erred in finding that the parties intended the phrase "with credit given" in the prepayment provisions to entitle appellee in prepaying the Note to deduct the amount of the Note payments previously made first from the amount outstanding on the Note and, again, from the resulting figure. We affirm on the anniversary date finding and reverse the prepayment credit finding and remand the case.

I

Appellants and appellee entered into a Settlement Agreement (Agreement) in satisfaction of claims appellants had against appellee. The terms of the Agreement required, *inter alia*, that appellee give appellants a Promissory Note (Note) calling for payment of $1,560,000 over a twenty-year period in substantially equal monthly payments. The Note provided for prepayment at substantial reductions of the face amount of the Note. One of appellant's attorneys testified at trial that at the time of the Agreement the value of the debt was $450,000.

The Agreement and Note were both signed on April 15, 1982. However, the first page of the Agreement stated that it was entered into as of April 5, 1982, and the Note bore the typed date of April 5, 1982, on the first page before the text of the Note. Several other documents in the package of documents agreed to by the parties bore different dates.[1]

The Note included a schedule of payment as follows:

> Upon the Closing Date and until the second anniversary date of the Note, there shall be monthly payments of $4,250 due on the fifth day of each month aggregating $51,000 per year....
> From the second until the twentieth anniversary date of the Note, there shall be payments of $6,750 due on the 5th day of each month aggregating $81,000 per year....

The Note further provided for acceleration of the debt

> if any payment under this Note is not paid when due and remains unpaid for seven business days, or if Borrower is in default under the terms and provisions of [the Agreement], the entire amount outstanding shall at once become due and payable at the option of the Note holder.

On the 5th day of every month after April 5, 1982, through March 5, 1984, appellee paid appellants $4,250.[2] On or about April 5, 1984, appellant Pauline Sacks received a check from appellee for $4,250. The day after she received the check she spoke with Anthony Nuland, one of the attorneys who had represented appellee

during negotiation of the Agreement and Note, and although she thought the check was for the incorrect amount, she did not so advise Mr. Nuland; nor did she advise appellee by any other means until nearly two months later. On June 2, 1984, she sent a letter notifying appellee that she was accelerating payment on the Note because of his default in failing to pay $6,750 on April 5, 1984, and demanding $850,000 plus 15% interest pursuant to the terms of the Note.[3]

Pending trial, appellee gave appellants, on April 3, 1987, a check for $178,800 as prepayment in satisfaction of the Note, pursuant to paragraph 5.3(e) of the Agreement which provided:

> If paid in full at any time after the fourth anniversary date of the Promissory Note, and provided that all other obligations under this Settlement Agreement have been or are contemporaneously satisfied in full, the amount payable on the date of prepayment shall be 40% of the amounts outstanding under the Promissory Note, *with credit given* for all amounts paid by Rothberg to the date of prepayment....

[Emphasis added]. Appellants refused to accept the check, contending, in view of appellee's default, that the amount was insufficient to satisfy the full prepayment amount, which they maintained was $496,800.[4] Appellee thereafter placed the $178,800 into a court-sanctioned escrow fund and continued to make monthly payments of $6,750 from August 5, 1984 through March 5, 1987.

At trial held October 27 through 29, 1987, Pauline Sacks testified that she in-

---

1. One of appellants' attorneys testified that in addition to the Agreement and Note there was a set of releases and indemnifications, a covenant not to sue, and two other promissory notes. A second Note, not at issue here, bears the date April 26, 1982, on the first page, upper right corner, and it also was sworn on April 15, 1982.

2. Appellee's first payment under the Note was dated April 5, 1982. It is unclear from the record when the payment was made. Appellee asserts in his brief that the payment was delivered on April 15, 1982. At oral argument appellants did not contest this assertion.

3. Appellants returned the checks that appellee sent appellants for $6,750 on May 5, 1984, and June 5, 1984. They also returned appellee's check of June 8, 1984, for $2,600, for the alleged default difference. On July 19, 1984, appellants sued appellee on the promissory note and for breach of contract. They placed appellee's subsequent monthly payments of $6,750 into a bank account in their names, which they designated an "escrow account," and advised appellee by letter of November 21, 1984, of their actions and that his future payments would be treated toward payment of the accelerated amount.

4. See Part III, *infra.*

tended the "anniversary date" of the Note to refer to April 5 because that was her birthday and she would receive a check on her birthday for the next twenty years. Appellants' attorneys, who had drafted the package of documents in connection with the Agreement, testified that they had advised their clients against using the phrase "with credit given" in Section 5.3(e) of the Agreement, but that Pauline Sacks had insisted on its inclusion for the sake of clarity when appellee's counsel had raised a question during the all night negotiation session on April 5, 1982.

At the conclusion of appellants' case, appellee moved for a directed verdict, and the trial judge took the case under advisement. On December 3, 1987, the judge issued a memorandum and order in which he treated appellee's motion as a motion for involuntary dismissal under Super.Ct.Civ.R. 41(b), granted the motion on the grounds that appellant failed to establish a prima facie case, and requested appellee's counsel to prepare proposed findings of fact and conclusions of law. On December 17, the judge issued an Order and Opinion, adopting verbatim appellee's proposed findings of fact and conclusions of law.

## II

■ Appellants first contend that this court should apply a strict standard of review to the trial judge's Order and Opinion because the judge adopted verbatim appellee's counsel's proposed findings. They rely on *Sullivan v. Malarkey,* 392 A.2d 1057 (D.C.1978), where the court stated

> While our standard of review properly should be more strict when the court adopts verbatim the findings proposed by one party, *see In re Las Colinas, Inc.,* 426 F.2d 1005, 1010 (1st Cir.1970), *cert. denied,* 405 U.S. 1067, 92 S.Ct. 1502, 31 L.Ed.2d 797 (1972), the essential consideration on review is whether the court's finding and conclusions ultimately represent the judge's own determinations.

*Id.* at 1061. *See also Leftwich v. Leftwich,* 442 A.2d 139, 142 (D.C.1982); *Schilling v. Schwitzer–Cummins Co.,* 79 U.S.App.D.C. 20, 21–22, 142 F.2d 82, 83–84 (1944).[5] Appellee responds that we should apply a clearly erroneous standard since there is no basis in the record to suggest that the trial judge did not independently review the evidence and the proposed findings. He relies on *Bay General Industries, Inc. v. Johnson,* 418 A.2d 1050, 1054 (D.C.1980). *See* D.C.Super.Ct.Civ.R. 52(a). Appellee further contends that since appellants did not object when the trial judge requested appellee to prepare proposed findings, they cannot raise this issue for the first time on appeal, citing *Hill & Range Songs, Inc. v. Fred Rose Music, Inc.,* 570 F.2d 554, 558 (6th Cir.1978).

Difficulties arise when a judge adopts verbatim a party's proposed findings and conclusions on a record bereft of any indication either that the judge has previously ruled orally on each and every finding and conclusion that appears in the final order

---

**5.** *Sullivan v. Malarkey* and *Leftwich v. Leftwich* did not refer to *Schilling v. Schwitzer–Cummins Co., supra,* in which the United States Court of Appeals for the District of Columbia Circuit held that findings submitted by counsel at the direction of the trial judge are entitled to the same weight as they would receive if drafted by the judge. The court defined "[t]he ultimate test of the adequacy of findings" not to be their source but, rather, "whether they are sufficiently comprehensive and pertinent to the issues to provide a basis for decision, and whether they are supported by the evidence." 79 U.S.App.D.C. at 22; 142 F.2d at 84 (footnotes omitted).

*Schilling* did not refer to a stricter level of scrutiny in reviewing the adequacy of findings. While *Sullivan* and *Leftwich* state that a stricter standard of review is required when the trial judge adopts verbatim findings submitted by

counsel, those cases interpreted the stricter standard only to require sufficient evidence of the trial judge's independent, personal determination, rather than reversal of judgments that would have been affirmed had the judge prepared the findings. *Sullivan, supra,* 392 A.2d at 1061; *Leftwich, supra,* 442 A.2d at 142. Thus, a judgment will be affirmed, in the absence of other legal error requiring reversal, if the findings prepared by counsel are determined to represent the trial judge's personal determinations. *Schilling, supra,* 79 U.S.App.D.C. at 22, 142 F.2d at 84; *Sullivan, supra,* 392 A.2d at 1061; *Leftwich, supra,* 442 A.2d at 142. *See also Louis Dreyfus & CIE. v. Panama Canal Company,* 298 F.2d 733, 737 (5th Cir.1962) (principles to guide appellate courts in determining whether a trial court's findings represent the trial judge's personal determinations).

or that the judge, having reviewed the proposed findings and conclusions, concluded that a better document could not have been prepared. As pointed out in *In re Las Colinas, Inc., supra,*

> a clash of interests must be recognized to exist between efficient administration that leads hard pressed judges to turn to counsel for help and the undeniable right of losing counsel to be assured that his [or her] position has been thoroughly considered. The court's findings must ultimately represent the judge's own determination.

426 F.2d at 1008–09 (citations omitted). While this does not mean that the clearly erroneous standard is eliminated when the trial judge adopts findings and conclusions prepared by a party,[6] absent the "badge of personal analysis," more careful review by the appellate court is necessitated, albeit in a narrow range of doubtful cases, if the court is to be certain that important evidence has not been overlooked or inadequately considered. *Louis Dreyfus & CIE. v. Panama Canal Company, supra* note 5, 298 F.2d at 738–39. We are mindful of the exceptional caseload under which the trial judges labor; we take this occasion only to remind them of the difficulty which verbatim adoption of proposed findings creates for our statutory obligation to defer to factual findings of the trial court.

The trial in the instant case lasted three days. When the judge issued a Memorandum and Order on December 3, 1987, granting the motion for involuntary dismissal, and asked appellee to submit proposed findings and conclusions, he had already decided the final outcome of the case. In that Order the judge stated that he had taken the motion under advisement so as to have a transcript available. The judge's questions during the trial and his discussions with counsel during argument on appellee's motion to dismiss indicate, further, that the judge closely followed the case and the arguments of counsel. However, appellants never indicated any objection to the trial judge's request that appellee prepare findings, nor did they submit their own or seek reconsideration after the judge issued his findings and conclusions on December 3, 1987; hence the force of their objection is somewhat attenuated. *Cf. Chase v. Gilbert,* 499 A.2d 1203 (D.C.1985). Therefore, although the Order and Opinion include alternative grounds that were not addressed in oral rulings, and the judge made no changes whatever in appellee's proposed findings and conclusions, we apply a clearly erroneous standard.

### III

Turning to the merits, we address first appellants' contention that the trial judge erred as a matter of law in ruling that appellee did not default in the Note payments on April 5, 1984. The ruling, they argue, ignored the language of the Note and Agreement, the parties' intent, and the evidence at trial. They maintain that no reasonable person in the parties' position could possibly have understood the Agreement and Note to mean that April 15 was the anniversary date of the Note because April 5 was the date typed at the top of the Note and all Note payments were to be made on the fifth day of every month. Furthermore, appellants argue, since appellee's first payment was April 5, 1982, he could only meet the precise terms of the Note, which require that annual payments aggregate $51,000 in the first two years and $81,000 after the second anniversary, if he began to pay $6,750 on April 5, 1984. Appellee contends that the term "anniversary date" could only refer to the anniversary date of the closing on April 15, 1982, because prior to that date, no contract existed, and hence no ambiguity existed.

■ Whether or not a contract is ambiguous is a question of law, *Dodek v. CF 16 Corp.,* 537 A.2d 1086 (D.C.1988), which this court will review de novo. In reviewing a contract for ambiguity, the court is to make such a determination on the "face of the language itself, giving that language its plain meaning, without reference to any rules of construction." *Kass v. William Norwitz Co.,* 509 F.Supp. 618, 625 (D.D.C. 1980). A contract is not ambiguous merely

---

6. *In re Las Colinas, Inc., supra,* 426 F.2d at 1010, 1012.

because the parties do not agree on the proper interpretation of a contract provision. *Holland v. Hannan,* 456 A.2d 807, 815 (D.C.1983); *Scrimgeour v. Magazine,* 429 A.2d 187, 189 (D.C.1981). *Accord, Dodek v. CF 16 Corp., supra,* 537 A.2d at 1093; *Kass v. William Norwitz Co., supra,* 509 F.Supp. at 623.

■ The term "anniversary date" is not defined in the Agreement or the Note. While the contract did not exist until the closing date of April 15, 1982, the first page of both the Agreement and Note were dated April 5, 1982. Appellee made his payments on the 5th day of the month after delivering his first payment on April 15, 1982. See note 2, *supra.* Because reasonable people in the position of the parties might have thought the disputed language meant different things, *1010 Potomac Assocs. v. Grocery Mfrs. of America,* 485 A.2d 199, 205 (D.C.1984) (citing *Intercounty Constr. Corp. v. District of Columbia,* 443 A.2d 29, 32 (D.C.1982)), we agree with the trial judge that the contract provision was ambiguous. *See Dodek, supra,* 537 A.2d at 1092.

The trial judge, therefore, was required to determine what a reasonable person in the parties' position would have intended, *Howard Univ. v. Best,* 484 A.2d 958, 967 n. 2 (D.C.1984); *Intercounty Constr. Corp. v. District of Columbia, supra,* 443 A.2d at 32; *Minmar Builders, Inc. v. Beltway Excavators, Inc.,* 246 A.2d 784, 786 (D.C. 1968), using extrinsic evidence to make that determination. *Howard Univ. v. Best, supra,* 484 A.2d at 967. Contrary to appellants' contention, however, unlike a motion for summary judgment, which requires that all evidence be viewed in the light most favorable to the non-moving party, a motion for involuntary dismissal in a non-jury case requires the trial judge to assess credibility as at the end of trial. *Keefer v. Keefer & Johnson, Inc.,* 361 A.2d 172, 174 (D.C.1976) (quoting *Warner Corp. v. Magazine Realty Co.,* 255 A.2d 479, 481 (D.C. 1969)). "Thus, if there is insufficient credible evidence to sustain each element of plaintiff's claim, or if, despite such credible evidence, a valid defense is evident from plaintiff's own case, judgment for the defendant is justifiable." *Marshall v. District of Columbia,* 391 A.2d 1374, 1379 (D.C.1978). *See Montgomery Ward & Co., Inc. v. Smith,* 412 A.2d 728, 730 (D.C.1980). Consequently, even if appellants offered uncontradicted evidence of the parties' intent, the trial judge still had the discretion to find that the evidence was not credible in granting the motion for involuntary dismissal. *See Marshall, supra,* 391 A.2d at 1379; *1010 Potomac Assocs. v. Grocery Mfrs., supra,* 485 A.2d at 205 (citing *International Bhd. of Painters v. Hartford Accident & Indem. Co.,* 388 A.2d 36, 43 (D.C. 1978)) (contract interpretation is a question of law unless it depends on the credibility of extrinsic evidence or on a choice among reasonable inferences to be drawn from extrinsic evidence); *see also Dodek v. CF 16 Corp., supra,* 537 A.2d at 1092–93.

■ The trial judge found that appellants "failed to demonstrate that the parties intended the 'anniversary date' to be a date other than the date of execution of the note," concluding that "the cumulation of [appellants'] evidence raises substantial questions as to the 'intention' of the parties and does not satisfy the [appellants'] burden of proof regarding the parol evidence." Although appellants offered the testimony of one of their attorneys that a reference in one of the documents to the Note dated April 15, 1982, was actually a typographical error, the trial judge found that this kind of error was unlikely to occur if both parties had agreed on an anniversary date of April 5. The judge observed that it was undisputed that the parties intended the Agreement to be deemed entered into on April 5, 1982, because that was Pauline Sacks' birthday, but that the documents executed in connection with the Agreement had different effective dates, and specifically, that the Note could not have an earlier effective date than April 15 when the Note was executed. We agree.

Under the Agreement, appellee was not obligated until April 15, 1982, to deliver the Note to appellants. *Einhorn v. Ceran Corp.,* 177 N.J.Super. 442, 450, 426 A.2d 1076, 1080 (1980) (contract speaks as of

date it was signed); *Norse Petroleum A/S v. LVO Intern, Inc.,* 389 A.2d 771, 773 (Del.Super.Ct.1978) (and citations therein) (contract considered to exist when final action necessary for its formation occurs). Consequently, the burden was on appellants to show by parol evidence that the parties intended the obligation to be effective for purposes of defining an anniversary date on April 5. Although Pauline Sacks testified that she intended her birth date of April 5 to be the anniversary date of the Note, she also testified that all documents were to be dated April 5, 1982, and that clearly was not what occurred. Further, the testimony of her attorneys was of limited help; they were trying to recall what had happened five years earlier and could only explain their own records, which showed that the Note was dated April 15, 1982, as a typographical error.[7] The trial testimony of one attorney, moreover, differed from his recollection when he had testified earlier in connection with injunctive proceedings. Evidence that the Agreement was entered into on April 5, although it was executed on April 15, is hardly compelling since the Agreement incorporates the April 5, 1982, date in its text and references the Note only in terms of the closing date of the Agreement.

Appellants contend, however, that since appellee had already made his first payment on April 5, 1982, the plain meaning of the Note provision regarding yearly accumulations can be given precise effect only if the second anniversary date (on which he was to begin increased payments) was April 5, 1984. Appellee maintains that he did not deliver his payment until April 15, 1982, although at that time the payment was dated April 5, 1982. In any event, appellee's earlier initial payment would be to his financial detriment because he would end up paying more than $51,000 due at the end of the second year under the terms of the Note since his payments would have to cover the ten-day period between April 5 and 15, 1984, in excess of the two-year period. His willingness to make this larger

aggregate payment does not necessarily render his interpretation of the provision unreasonable, however; the evidence indicated that he attempted to accommodate Pauline Sacks by dating the first payment April 5, 1982. Furthermore, the parties had expected the Agreement to be executed on April 5, 1982, and when that proved impossible, after an all night session on April 5, 1982, several days passed before the lawyers could put the various documents in final form for the parties to sign, on April 15, 1982. Accordingly, we hold that the trial judge's finding that appellants failed to meet their burden of proof to show that the parties intended the anniversary date of the Note to be April 5 is not clearly erroneous.

■ Even were we to find that the judge's factual findings must be rejected, appellants would be estopped, as the trial judge found, from exercising their right to accelerate the Note payments. Pauline Sacks failed to inform appellee of his alleged deficient payment on April 5, 1984, until she wrote him nearly two months later, long after his cure period of seven days had expired. *American Century Mortgage Investors v. Unionamerica Mortgage & Equity Trust,* 355 A.2d 563, 565 (D.C.1976); *Cassidy v. Owen,* 533 A.2d 253, 255 (D.C.1987); Restatement of Contracts, § 205 (1981) (covenant of good faith and fair dealing). On cross examination Pauline Sacks testified that in the past she had called appellee as well as his attorney, Nuland, to advise them when she thought appellee was not in compliance with the Agreement, and admitted that was one of the reasons she had tried to call him after receiving the April 5, 1984 payment. Appellants' reliance on *Dunn v. General Equities of Iowa, Ltd.,* 319 N.W.2d 515, 517 (Iowa 1982), is clearly misplaced; the court there held that in view of a course of dealing accepting late payments on an installment note, the right to accelerate the note was waived absent notice to the obligor that future late payments will not be

---

7. *There* was testimony about appellee's Exhibit No. 9 marked for identification which purported to be a letter dated April 15, 1982, prepared

by appellants' attorneys to the administrator of appellee's estate which referred to the Note as dated April 15, 1982.

accepted. The April 6, 1984, letter to appellee indicating that appellants would require strict compliance with the terms of the Agreement and Note did not indicate any concern about the alleged deficiency on April 5, 1984, of $2,500. Further, appellants' contention that because they did not have a duty to give notice of their intent to accelerate the Note there is no estoppel, appellee not having shown his reliance, citing *Boyle v. American Sec. Bank*, 531 A.2d 1258, 1259 (D.C.1987), fails to consider that upon receiving notice on June 2, 1984, appellee immediately tendered the difference with interest. Moreover, although we need not determine whether the acceleration amounted to an improper forfeiture, the fact that a $2,500 deficiency for a short period of time would result in an obligation to pay $850,000 plus 15 percent interest, gives us pause in light of appellants' prior forgiveness of earlier failures by appellee to comply with the strict letter of the Agreement and Note. *Dunn v. General Equities of Iowa, Ltd., supra*, 319 N.W.2d at 517. *Cf. Word v. Ham*, 495 A.2d 748, 751 (D.C.1985); *Trudeau v. Lussier*, 123 Vt. 358, 189 A.2d 529, 535 (1963); *See generally, Wemhoff v. Investors Management Corp. of Am.*, 528 A.2d 1205, 1209 (D.C. 1987) (law generally disfavors forfeitures); *Vicki Bagley, Inc. v. Laufer*, 482 A.2d 359, 367–368 (D.C.1984) (same).

## IV

■ Appellants also contend that the trial judge erred in finding that the term "with credit given" in Paragraph 5.3(e) of the Agreement, quoted at 4, *supra*, modified the prepayment amount both before and after calculating forty percent of the amounts outstanding. Appellants contend that the phrase, "with credit given", is ambiguous and that the judge erred by not considering parol evidence on the parties' intent. They contend that the term only allowed appellee to receive credit for the amount he paid to date ($318,000) against the full amount of the Note ($1,560,000), a calculation that constitutes the "amounts

outstanding under the Promissory Note" ($1,242,000). Under appellants' interpretation, the prepayment amount due would be forty percent of $1,242,000, or $496,000.

The trial judge found that appellee was entitled to an additional credit of the amount he already paid ($318,000) against the $496,000 "amounts outstanding," so that appellee's prepayment of $178,800 was sufficient to fulfill his obligations under the Note. The judge based his finding on the determination that the phrase "with credit given" in Section 5.3(e) must be given the same meaning as the same phrase in Sections 5.3(a) through (d). Section 5.3(d), for example, states:

> If paid in full on or before the fourth anniversary date of the Promissory Note, and provided that all other obligations under this Settlement Agreement have been or are contemporaneously satisfied in full, the amount payable on the date of prepayment shall be $995,000, with credit given for all amounts paid by Rothberg to the date of prepayment....

However, in Sections 5.3(a) through (d), the amounts payable are lump sums, so that the phrase "with credit given" unambiguously modifies that sum. In contrast, in Section 5.3(e), "with credit given" could reasonably be construed as credit against the full amount of the Note, against forty percent of the Note, or, as appellee contends, against both. While the same words appearing in different parts of a contract should generally be given consistent meaning,[8] that consistency alone does not erase an ambiguity arising from differing contexts when the words serve a different purpose. Appellee argues that because "amounts outstanding" already gives credit against the *full amount of the Note*, "with credit given" must be construed differently in order for the phrase not to be redundant, and that there is no reason for the clause to modify the earlier clause.

A reasonable interpretation of the phrase "with credit given" is that it was intended

---

**8.** *Cf. Washington Metro. Area Transit Auth. v. Mergentime*, 200 U.S.App.D.C. 95, 626 F.2d 959 (1980).

to clarify the phrase "amounts outstanding under the Promissory Note." As appellants point out, under appellee's interpretation, it would be possible to pay off the twenty-year note by the seventh year without paying any more than the regular monthly payments and thereafter appellants would owe appellee money. That the language is redundant is explained by the fact that Pauline Sacks insisted on its inclusion against the advice of her attorneys, who thought the additional clause would, contrary to her intent to make matters clear, create an ambiguity. Because of this ambiguity, we hold that the trial judge erred in concluding that the language was unambiguous.

However, the trial judge also inquired into the parties' intent at the time of contract formation and concluded that they had intended for credit to be given against the prepayment amount after calculation of forty percent.[9] He found that appellant Pauline Sacks' insistence on including the language "with credit given" in Section 5.3(e) despite her counsel's advice indicated an intent for the words to have additional meaning, not just to clarify the meaning of "amounts outstanding". It is clear from the record that she did intend to have the words have additional meaning, but not in the sense that the trial judge found.

Pauline Sacks testified that she intended appellees only to receive credit for the amounts he had already paid in calculating the 40 percent that would be due, and that the phrase was intended to clarify that. Specifically, she testified that she wanted to add the term to make it clear that appellee would receive credit for the amounts that he had paid when his attorney questioned, during the all night negotiation on April 5, 1982, whether the language, without repeating the term a second time, provided for such credit. Her attorneys confirmed in their testimony the circumstances under which the term was added for a second time. Although the trial judge was free to discredit her testimony, there is no

evidence to support his finding that she intended to give appellee a double credit. The judge's reliance on the fact that the Agreement was a lengthy twenty-one page document cuts in favor of appellant in our view. Pauline Sacks' attorney testified that the agreement was "an extraordinarily idiosyncratic document reflecting months of negotiation between the client and the law firm as well as opposing counsel and appellee." Appellee's reliance on *Providence Hospital v. Group Health Assoc.*, 494 A.2d 639, 640 (D.C.1985) is misplaced since there the court found no fundamental infirmity in the contract terms and no misunderstanding by the hospital as to the meaning of the contract term. Finally, viewing the circumstances of the parties, the judge could not reasonably conclude that a reasonable person in appellants' position would agree to allow appellee upon default to pay off a $1,560,000 Note after paying minuscule monthly payments for only seven years. We hold that the trial judge's double credit finding was clearly erroneous and must be reversed.

Accordingly, the judgment is affirmed in part and reversed in part, and the case is remanded to the trial court so that appellee can proceed to put on his case.

---

**9.** *1010 Potomac Assocs. v. Grocery Mfrs. of America, supra*, 485 A.2d at 211 (provisional receipt of parol evidence in non jury trial);   *accord Burbridge v. Howard Univ.*, 305 A.2d 245, 247 (D.C.1973).