**RIVERS & BRYAN, INC., Appellant,**

v.

**HBE CORPORATION, Appellee.**

No. 91–CV–882.

District of Columbia Court of Appeals.

Argued Nov. 3, 1992.
Decided July 15, 1993.

Anne K. Howard, Bethesda, MD, for appellant.

Edwin A. Sheridan, Washington, DC, for appellee.

Before ROGERS, Chief Judge, and STEADMAN and SCHWELB, Associate Judges.

STEADMAN, Associate Judge:

This is an appeal from an order of the trial court entering judgment in favor of appellee, HBE Corporation ("HBE"), in the amount of $300,000 against appellant, Rivers & Bryan, Inc. ("Rivers & Bryan"),[1] on HBE's third-party complaint for indemnification arising out of a contractual agreement. Rivers & Bryan contends that the trial court erroneously ruled that the contract between the parties provided that Rivers & Bryan was required to indemnify HBE for HBE's own wrongful actions. We agree that the trial court misapplied controlling principles of law relating to the interpretation of such indemnity agreements and accordingly reverse.

## I.

On December 23, 1986, Broanagene Edwin Conner, an employee of Rivers & Bryan, fell through a hole in the roof of a

---

1. Appellee was the third-party plaintiff and appellant was the third-party defendant in the case below.

building on which he was performing masonry work. He died as the result of the twenty-six foot fall to the ground below. Rivers & Bryan had been hired as the masonry subcontractor by HBE, the general contractor of the project.

After the accident, both HBE and Rivers & Bryan were cited by the *Occupational Safety and Health Administration ("OSHA")* for violations of OSHA safety regulations.[2] HBE was cited for three violations, Rivers & Bryan for four. One violation was common to both.[3] Neither Rivers & Bryan nor HBE contested the citations.

■ Doris Conner, the decedent's mother and personal representative of his estate, filed a survival and wrongful death action against HBE, Janco Enterprises ("Janco") (the roofing subcontractor who one week previously had created the hole through which decedent fell), and Transit Employees Federal Credit Union (the "Credit Union") (the owner of the property),[4] alleging various acts of negligence as well as a violation of OSHA, 29 C.F.R. § 1926.-500(b)(1). See note 3, *supra.* As refined in her pretrial statement, Ms. Conner set forth her claims as follows:

II. *Liability*

The Plaintiff contends that the decedent's death was caused by the negligence of the Defendants in the following respects:

1. Janco Enterprise, Inc.

(a) in creating the hole in the roof of the building through which decedent fell to his death and failing to provide proper warnings and guarding with respect to the same;

(b) in violating the safety standards set forth in 29 C.F.R. § 1926.500(b)(1).

2. HBE Corporation

(a) in causing and permitting the hazardous condition created by the presence of the aforementioned hole in the roof of said building to exist and in failing to require Janco Enterprises, Inc. to correct said situation;

(b) in failing to provide proper warnings and guarding with respect to the hole in the roof;

(c) in violating the safety standards set forth in 29 C.F.R. § 1926.500(b)(1) and .450(a)(1).[5]

3. Transit Employees Federal Credit Union

(a) in failing to properly supervise its agents which it retained to construct the subject building;

(b) in failing to conduct regular and proper inspections of the construction site.

Three other parties were subsequently drawn into the litigation: Aetna Casualty

---

**2.** The OSHA regulations were promulgated pursuant to the Occupational Safety and Health Act of 1970, 29 U.S.C. §§ 651–678 (1988).

**3.** Both were cited for a violation of 29 C.F.R. 1926.500(b)(1), in that "floor openings were not guarded by standard railings and toeboards or covers as specified in paragraph (f) of this section," with the consequence that on December 23, 1986, a worker "fell through an unguarded opening [in the roof] approximately 3' × 3' in size" to the ground 26' below. It does not appear that all the cited violations related to the accident.

**4.** The District of Columbia Workers' Compensation Act (the "Act"), D.C.Code §§ 36–301 to –345 (1988), prevents an employee who has suffered a work related injury from seeking damages against his or her employer. The injured employee's only recourse is to seek compensation under the Act. D.C.Code § 36–304 (1988).

Thus, Ms. Connor would have been prohibited from including Rivers & Bryan as a defendant in her survival and wrongful death action.

The Act does not prevent an employee from seeking damages against a third-party tortfeasor. *See Myco, Inc. v. Super Concrete Co.,* 565 A.2d 293, 296–97 (D.C.1989); *see also DiNicola v. George Hyman Constr. Co.,* 407 A.2d 670, 674–75 (D.C.1979). This court has held that, with one exception not applicable here, an employee of a subcontractor can seek damages against a general contractor as a third party tortfeasor. *See Meiggs v. Associated Bldrs.,* 545 A.2d 631, 633–35 (D.C.1988), *cert. denied,* 490 U.S. 1116, 109 S.Ct. 3178, 104 L.Ed.2d 1040 (1989).

**5.** The citation HBE received for violating 29 C.F.R. § 1926.450(a)(1) read: "Ladders were not used to give safe access to 11 elevations: (a) Access to roof—Employee permitted to scale scaffold planking over 3' high in order to reach top of parapet wall and roof deck on 12/23/86."

& Surety Company ("Aetna"), Adams Fabricated Steel Corporation ("Adams"), and Rivers & Bryan. Aetna, which was Rivers & Bryan's workers' compensation carrier and had paid death benefits to the decedent's estate, sought to be subrogated to the rights of plaintiff to recover from the defendants the amount Aetna had paid in workers' compensation benefits. HBE filed a third-party complaint against Adams (the subcontractor hired by HBE to supply and erect the structural steel, which in turn had hired Janco as a sub-subcontractor).[6]

Finally, with respect to the matter immediately at issue before us, HBE brought a third-party claim against Rivers & Bryan for indemnification based upon a clause in the subcontract agreement entered into between HBE and Rivers & Bryan. In this third-party complaint, HBE contended that Rivers & Bryan was liable to HBE for any amount that HBE was found to owe the plaintiff. The indemnification clause read:

> Subcontractor agrees to observe and comply with all federal, state and local statutes and/or ordinances relating to the performance of this subcontract (including the Occupational Safety and Health Act of 1970, as amended),* to assume all responsibilities of the Contractor thereto, and to indemnify and hold harmless Contractor from all penalties, damages or other loss resulting from subcontractor's failure to do so. Subcontractor shall pay the cost of permits and licenses required to perform this subcontract.
>
> * Subcontractor is not responsible for others who are not in conformance with OSHA.

The subcontract was on a pre-printed form, but the asterisk symbol was written in by the parties, and the language to which the asterisk refers ("Subcontractor is not responsible for others who are not in conformance with OSHA") was typed in at the bottom of the page.

---

**6.** There were also several cross-claims among the defendants and third party defendants, none of which are involved in the immediate appeal.

Plaintiff settled with HBE, Janco, and Adams several months prior to trial for a total of $450,000, of which $300,000 was contributed by HBE. The action against the Credit Union, the several cross-complaints, and the third party action against Adams were disposed of prior to trial as well. This left unresolved only HBE's third-party indemnification claim against Rivers & Bryan, which was heard at a bench trial on June 12, 1991. The facts were stipulated and no witnesses were presented;[7] counsel merely argued their respective interpretations of the contract clause in question. Ruling orally at the end of the proceedings, the trial court found in favor of appellee HBE for the entire $300,000. It is from this judgment that Rivers & Bryan appeals.

**II.**

Both parties agree that the outcome of this appeal turns upon the interpretation of the indemnification clause in the subcontract and that since no extrinsic evidence was introduced at trial, the interpretation is a question of law before this court. *See Jessamy Fort & Ogletree v. Lenkin,* 551 A.2d 830, 831 (D.C.1988); *see also Sacks v. Rothberg,* 569 A.2d 150, 154 (D.C.1990). Moreover, HBE does not seek to have the clause interpreted to provide HBE with partial indemnity or contribution; HBE's argues only for total indemnity.

We note at the outset that the indemnification clause does not cover all loss suffered by HBE that relates to its subcontract with Rivers & Bryan; it speaks only of failure by Rivers & Bryan to comply with OSHA and other statutes with resultant loss to HBE. An examination of Ms. Conner's original complaint and her pretrial statement, however, indicates that her claims were based not merely on violations of OSHA but also on broad allegations of negligence. Moreover, the complaint alleged negligence not just on the part of HBE, but on the part of Janco and the Credit Union as well. Additionally, HBE

---

**7.** Four exhibits were admitted, including the subcontract between HBE and Rivers & Bryan.

was not the only party that settled. HBE only agreed to pay $300,000 of the $450,000 settlement.[8]

While parties are free to enter into indemnification agreements, even ones providing that an employer who would otherwise be protected by the Workers' Compensation statute will indemnify a third party, such agreements are narrowly construed by the courts "so as not to read into [them] any obligations the parties never intended to assume," *Haynes v. Kleinewefers & Lembo Corp.*, 921 F.2d 453, 456 (2d Cir.1990). If parties seek to provide indemnification not just for the actions of the indemnitor, but also for the actions of the indemnitee, so that the indemnitee would be entitled to full reimbursement pursuant to the indemnification clause (in this case $300,000) when the indemnitee is itself negligent, the criterion is even stricter. In order to find that a party contracted away its own liability by receiving full indemnity therefor, there must be a clear intention to do so that is apparent from the face of the contract. *District of Columbia v. Royal*, 465 A.2d 367, 368–69 (D.C.1983) ("reviewing court must be 'firmly convinced that such an interpretation reflects the intention of the parties' ... [and] such an intention should be plainly evident from the face of the contract" (quoting *United States v. Seckinger*, 397 U.S. 203, 211, 90 S.Ct. 880, 885, 25 L.Ed.2d 224 (1970))); *Moses–Ecco Co. v. Roscoe–Ajax Corp.*, 115 U.S.App. D.C. 366, 368, 320 F.2d 685, 687 (1963) (intent must "plainly appear from the agreement"). Thus, if the alleged intention to provide this type of protection for the indemnitee is at all ambiguous, this standard is not satisfied. Contractual language is ambiguous if it is susceptible to more than one reasonable interpretation, *Howard Univ. v. Best*, 484 A.2d 958, 966 (D.C.1984), and the question of whether a contract is ambiguous is reviewed by this court *de novo*, *Sacks, supra*, 569 A.2d at 154.

The general rule for contract interpretation is that if a contract is determined by the court to be ambiguous, then external evidence may be admitted to explain the surrounding circumstances and the positions and actions of the parties at the time of contracting. *See Howard Univ., supra*, 484 A.2d at 966–67; *Rich v. Sills*, 130 A.2d 920, 922 (D.C.1957). The ultimate interpretation then becomes a question for the finder of fact. *Howard Univ., supra*, 484 A.2d at 966. Conversely, if a court determines that a contract is unambiguous, the interpretation is a question of law for the court. *Id.* at 966–67; *Spellman v. American Sec. Bank*, 504 A.2d 1119, 1127 (D.C.1986). In this area of indemnity, however, where a party purports to have the right to indemnity for its own negligence, there are unique rules. If the court determines that the contract is ambiguous on the issue of indemnifying the negligence of the indemnitee, then rather than the interpretation becoming a jury question, a particular result is required, namely that there is no indemnification for the indemnitee's own negligence. *See Seckinger, supra*, 397 U.S. at 211 & n. 15, 90 S.Ct. at 885 n. 15; *Royal, supra*, 465 A.2d at 368–69.

The trial court found that Rivers & Bryan was obligated to indemnify HBE even when HBE's own actions were solely or concurrently a cause of the harm. After evaluating the contractual provision, we cannot agree with this conclusion in light of the legal principles just discussed. As Rivers & Bryan correctly argues, the contract is at least ambiguous. In particular, as the discussion before the trial court showed, it is not clear whether the specially added phrase that the subcontractor was not responsible for "others" not in compliance with OSHA encompassed only other subcontractors or was meant to include HBE as well.[9]

---

8. The record is unclear as to the agreed upon division of the remaining $150,000.

9. HBE argues that the phrase in the printed portion stating that Rivers & Bryan "assume[s] all responsibilities of the Contractor" with re-

spect to OSHA obligations compels a contrary reading. Quite apart from the preference given to specially devised language added to a printed form, *see, e.g., Craven v. Elmo*, 442 A.2d 526, 528 (D.C.1982), we think that this phrase is

In its brief on appeal, HBE relies heavily on *Moses–Ecco, supra.*[10] There, the United States Court of Appeals for the District of Columbia Circuit, in a case binding on this court,[11] held that the language of the subcontract involved "was so broad and sweeping as to plainly reveal an intent to encompass losses incurred in whole or in part by the negligence of the indemnitee." *Moses–Ecco, supra,* 115 U.S.App.D.C. at 369; 320 F.2d at 688; *accord District of Columbia v. General Heating Eng'g Co.,* 168 A.2d 903, 905 (D.C.1961), *aff'd,* 112 U.S.App.D.C. 225, 301 F.2d 549 (1962). However, the disputed language in the case at bar differs from that in *Moses–Ecco* in several significant ways.[12] First, in *Moses–Ecco,* the clause specifically stated that it covered "any loss because of damage or injury to persons or property arising or *resulting from the performance of this contract.*" This is much broader than the language in the instant case, which provides indemnification for "all penalties, damages or other loss *resulting from Subcontractor's failure to* [comply with the clause]." Rivers & Bryan contracted to indemnify HBE for any losses *due to Rivers & Bryan,* whereas Moses–Ecco contracted to indemnify Roscoe–Ajax for any damages *arising from the contract,* with no limitation that they arise due to the actions of the subcontractor.

Second, the clause in *Moses–Ecco* is not addressed specifically to complying with statutes and ordinances; it is a general indemnity clause presumably applying to liability for any action arising out of the contract. In the instant case, however, the clause is addressed specifically to liability for failure to comply with statutes and regulations.[13] Third, there is no language in *Moses–Ecco* similar to the language that the parties in the instant case added to the pre-printed contract. For these reasons, *Moses–Ecco* does not control the present case.

HBE also relies on *Princemont Constr. Corp. v. Baltimore & O.R.R.,* 131 A.2d 877, 878 (D.C.1957), in which this court held that the indemnification clause in the contract between appellant and appellee was "so broad and comprehensive that although it contained no express stipulation indemnifying against [appellee's] own negligence, it accomplishes the same purpose." The clause in *Princemont* provided that Princemont would "assume all liability for

---

inadequate to definitively settle the question of indemnity liability. Moreover, the assumption of responsibility relates only to OSHA and other statutory requirements, and not to any other matters with respect to which HBE may be responsible under negligence principles.

**10.** We note that "[c]ontract interpretation is largely an individualized process." *Seckinger, supra,* 397 U.S. at 213 n. 17, 90 S.Ct. at 886 n. 17. The precise contractual language and circumstances of the case are of paramount importance, therefore, and to the extent that the contractual language from prior cases significantly differ, those cases cannot control.

**11.** *See M.A.P. v. Ryan,* 285 A.2d 310, 312 (D.C. 1971).

**12.** The contractual clause in *Moses–Ecco* provided:

The Subcontractor agrees in the performance of the contract ... that he will at all times indemnify and save harmless the Owner and the Contractor against any loss, because of injury or damage to persons or property arising or resulting from the performance of this contract, including any and all loss, cost, damage or expense which the Owner and/or

Contractor may sustain or incur on account of any claim, demand or suit made or brought against them or either of them by or on behalf of any employee of [the Subcontractor]. *Moses–Ecco, supra,* 115 U.S.App.D.C. at 368, 320 F.2d at 687.

**13.** In none of the cases cited by the parties was there a contractual indemnity clause that was specifically addressing the duty of the indemnitor to comply with relevant statutes and ordinances. All of the clauses to which we are cited deal either with negligence in connection with performance of the contract or with all injury or loss arising from the performance of the contract. The clause in the instant case is significantly different. It deals specifically with a particular type of responsibility of the indemnitor—the responsibility to comply with statutes and regulations—and loss resulting from the failure to comply with those statutes and regulations. While both parties treat the indemnification clause as a negligence reimbursement provision, there would be no requirement for Rivers & Bryan to indemnify HBE under the clause if, for example, Rivers & Bryan acted in a manner that was negligent but unrelated to adherence to a statute or regulation.

any and all loss and damage to property and claims for injury to or death of persons in connection with or growing out of the use of said premises." *Id.* at 877. Like the clause in *Moses–Ecco*, this clause is far broader than the one in the present case, in that it does not specify that it relates to "subcontractor's failure" to satisfy any regulations; instead, it relates to any and all personal injury and property damage actions arising from the contract. *See also Bland v. L'Enfant Plaza North, Inc.,* 154 U.S.App.D.C. 26, 473 F.2d 156 (1972); *District of Columbia v. C.F. & B., Inc.,* 442 F.Supp. 251 (D.D.C.1977). For this reason, *Princemont* is also unpersuasive in this case.

Rivers & Bryan suggests, and we agree, that the clause in the case at bar is more analogous to the one in *Royal, supra,* 465 A.2d at 368. There, the indemnity clause provided that

> [t]he Contractor [indemnitor] shall indemnify and save harmless the District [indemnitee] and all of its officers, agents and servants against any and all claims or liability arising from or based on, or as a consequence or result of, any act, omission or default of the Contractor, his employees, or his subcontractors, in the performance of, or in connection with, any work required, contemplated or performed under the Contract.

*Royal,* supra, 465 A.2d at 368. The court held that the indemnitee "could not 'recover for damages resulting either from its own negligence or from acts or omissions in which it was concurrently negligent.'" *Id.* at 369. Like the present case, the indemnification clause in *Royal* specifically provided for indemnification only when the indemnitee was held liable because of the actions *of the indemnitor.*[14] Based on that language, this court held that the indemnitor was not required to indemnify the indemnitee for the indemnitee's own negligence.

■■■ In sum, we conclude that under the applicable legal principles and precedents, the indemnification clause cannot be invoked to require Rivers & Bryan to indemnify HBE for HBE's own misfeasance or for the misfeasance of others, and not in any event for liability arising in any way other than through OSHA or other statutory violations.

■■■ As to the issue of whose actions were the basis for HBE's liability in the settlement of the original action, the burden of proof was on the party seeking indemnification, HBE. *See, e.g., Peter Culley & Assocs. v. Superior Court,* 10 Cal.App.4th 1484, 13 Cal.Rptr.2d 624, 633 (Cal.Ct.App.1992); *McKinney v. South Cent. Bell Tel. Co.,* 590 So.2d 1220, 1222 (La.Ct.App.1991), *writ denied,* 592 So.2d 1302 (1992); *Donaldson v. Commonwealth,* 141 Pa.Cmwlth. 474, 596 A.2d 269, 281 (1991), *appeal denied,* 530 Pa. 667, 610 A.2d 46 *and* 531 Pa. 648, 612 A.2d 986 (1992). The record is inadequate in this regard. As already indicated, Ms. Conner's claims involved sweeping assertions of both negligence and violations of OSHA not only against HBE, but against others as well. HBE did not demonstrate that it was not at least partially its own direct acts of misfeasance that gave rise to HBE's liability. To the extent HBE's liability was vicarious, it was not shown to be derivative solely of Rivers & Bryan's prime responsibility. Moreover, as noted, the lawsuit was not based solely on OSHA violations; liability imposed on HBE could flow at least in part from negligence of itself or others, unrelated to OSHA or other statutes or ordinances. In short, on the record presented, HBE did not satisfy its burden of demonstrating the requisite exclusive link between the $300,000 settlement payment and Rivers & Bryan's liability under the contractual indemnity clause as properly interpreted.

Accordingly, the judgment appealed from is hereby reversed and the case is remanded to the trial court with directions to enter judgment in favor of Rivers & Bryan.

---

14. Although *Royal* does not involve liability specifically due to violations of statutes or ordinances, we think that it is analogous to the instant case in its limitation of the obligation to indemnify to situations involving the actions of the indemnitor.