**BALL STATE UNIVERSITY and the American Association of Colleges for Teacher Education**

v.

**The UNITED STATES.**

**No. 381–72.**

United States Court of Claims.

Dec. 19, 1973.

George E. Cranwell, Arlington, Va., atty. of record for plaintiff.

Lawrence S. Smith, Washington, D. C., with whom was Acting Asst. Atty. Gen. Irving Jaffe, for defendant.

Before DAVIS, NICHOLS and KUNZIG, Judges.

NICHOLS, Judge:

This is a review of a decision of the Armed Services Board of Contract Appeals (ASBCA), Appeal of Ball State University, ASBCA No. 16344, 72–1 BCA § 9246. We must apply the standards of the Wunderlich Act, 41 U.S.C. §§ 321, 322. The facts are not seriously in issue, the question to be decided being a matter of law, the interpretation of a contract. Since we agree entirely with the Board, it is possible to restrict our discussion to the minimum necessary to explain our decision, leaving those who

desire to know more about the case to refer to the published Board decision, and the able briefs before us.

The contract in dispute was awarded by the Department of Health, Education and Welfare, and its purpose was in-service development of teachers for the disadvantaged, as authorized by the National Defense Education Act, 20 U.S.C. § 591. By the terms of that Act, the contract had to be awarded to an institution of higher education but the one here involved, Ball State University, our plaintiff, subcontracted to American Association of Colleges for Teacher Education (AACTE). Both prime and subcontracts called basically for cost reimbursement, without profit, so there was no cushion to absorb unreimbursed costs.

The prime contract clause in dispute, Article 12, reads as follows:

*Article 12. Allowable Costs*

A. For the performance of this contract, the Government shall pay to the Contractor the costs determined by the Contracting Officer to be allowable in accordance with Federal Procurement Regulations Part 1–15, Contract Cost Principles and Procedures (41 CFR 1–15) as in effect on the date of this contract, and such other costs as may be specifically provided in this contract. Allowable costs shall include, but not necessarily be limited to, the following:

(1) Direct Costs:

*(a) Personal services*

*(b) Employee benefits*

*(c) Travel*

*(d) Office supplies*

*(e) Reproduction*

*(f) Instructional supplies*

*(g) Miscellaneous services*

*(h) Rental of space & equipment*

*(i) Communications*

(2) Indirect, or overhead, costs *in the amount of $23,000*

(3) *Stipend payments to eligible enrollees attending the Institutes*

B. The total allowable cost payable under this contract shall be determined on the basis of an audit by representatives of the Commissioner. The Contractor agrees to repay to the United States Office of Education any amount of payment received in excess of the actual cost, and the Government agrees to pay to the Contractor any amount due as determined by such audit.

(Except for the caption of Article 12, all of the above emphasis [*italics*] were supplied to indicate what was typed into the original contract, the remainder being printed. The Board called the printed part "boilerplate".)

■ Afterwards, by amendment, the $23,000 figure for indirect costs was increased to $39,000. The contract cost ceiling was $1,340,738, which amount has been paid to plaintiff, of which $1,226,966.40 was for direct costs, the remainder for indirect costs. The total amount of indirect costs was $197,466.-31, by Government audit. Plaintiff claims an additional $83,724.71 for unreimbursed indirect costs but according to the Board has been overpaid by $74,741.60 since the $1,340,738 payment included $74,741.60 in excess of the allowable $39,000 for indirect costs. Defendant counterclaims for the overpayment. Only the meaning of the contract is in serious dispute. We agree with the Board that the $39,000 figure was a contractual ceiling on reimbursement for indirect costs, that plaintiff cannot recover, and has been overpaid in the amount stated. Of course, it was AACTE that actually incurred the extra costs, but it is not in privity of contract with defendant and its claim if any, against Ball State University is not before us and we do not pass on it.

■ It is unnecessary to consider how plaintiff could be paid above the $1,340,738 cost ceiling, since Article 12 is decisive against it. Plaintiff, however, invites attention to the words in Article 12A "Allowable costs shall include, but not necessarily be limited to," and the statement in paragraph B that the total allowable cost shall be determined on the basis of an audit. The difficulty is that plaintiff's view would make wholly ineffective the specific provision that the indirect costs will be $39,000. Interpretations are not favored that leave portions of contract language useless, inexplicable, inoperative, meaningless or superfluous. Hol-Gar Mfg. Corp. v. United States, 351 F.2d 972, 979, 169 Ct.Cl. 384, 395 (1965). This is especially true when the clause to be nullified was typed in and the competing clauses were boilerplate, as here. Moreover, giving the $39,000 clause its full effect does not correspondingly nullify the other clauses. The quoted language of Article 12A seems to mean that costs of types or kinds allowable under the published cost principles shall be allowable though not specifically set forth in the contract. As to Article 12B, it surely does not denote that the auditors in allowing or disallowing costs are exempted from following the express provisions of the contract.

The Board finds without exception taken that plaintiff's proposals in pre-contact negotiations provided fixed sums for indirect costs, not such sums as audit might develop. In proposing a time extension and cost increase, plaintiff said "Please note that the budget of each state component shows no indirect costs. Such items will be charged only as direct costs". The added $16,000 for indirect costs provided by Amendment 2 was however said to be "in accordance with contractor's proposal * * *".

■ Plaintiff urges the rule of *contra proferentem*, but it fails to show the contract interpretation it now urges on us was reasonable in light of the whole contract. Bishop Engineering Co. v. United States, 180 Ct.Cl. 411 (1967). There is nothing to show it construed

the contract as it now does before signing it. Moreover, Board findings show it was plaintiff in its proposals who put forward the idea of a fixed sum for indirect costs. *Contra proferentem,* on the existing record, might therefore work against plaintiff more logically than against defendant.

██ We may note that in case of any contractor with multiple activities, the amounts and allocations of indirect costs are always matters of opinion. It would be natural for parties to agree on a fixed sum to add to direct costs in the hope—here a vain one—of avoiding future controversy. Plaintiff's theory that the $23,000, as amended, $39,000, for indirect costs was intended to be "provisional" cannot be accepted in view of the lack of record support for it. Plaintiff urges "unjust enrichment" with plausibility insofar as in a no-profit contract the partial disallowance of audited costs lead to the Government getting services at less than cost. However, plaintiff does not show the kind of overreaching that might lead us to reform such a loss contract. *Cf.* Chernick v. United States, 372 F.2d 492, 178 Ct. Cl. 498 (1967). Plaintiff says the contracting officer did not assert an overpayment, and it might not have appealed had it known one would be claimed at the Board level. It knew from the audit report it had received an overpayment; after reading the Board decision it has sued here, and defendant's right to counterclaim here is statutory. 28 U.S.C. §§ 1503, 2508.

In view of the foregoing, we hold that the Board decision is not arbitrary or capricious and is not contrary to law. The substantiality of evidence to support its findings is not challenged. Plaintiff's motion for summary judgment is denied. Defendant's motion for summary judgment is granted. Plaintiff's petition is dismissed. On defendant's counterclaim judgment is entered for defendant in the sum of $74,741.60, as found by the Board.