DISTRICT OF COLUMBIA DEPARTMENT OF HOUSING AND COMMUNITY DEVELOPMENT, Appellant,

v.

Anna M. PITTS, Appellee.

No. 10591.

District of Columbia Court of Appeals.

Submitted Oct. 21, 1976.

Decided March 22, 1977.

John R. Risher, Jr., Corp. Counsel, Louis P. Robbins, Principal Asst. Corp. Counsel, Richard W. Barton and Leo N. Gorman, Asst. Corp. Counsel, James B. McDaniel and S. Howard Wallach, Special Asst. Corp. Counsel, were on the brief for appellant.

Joanne Sgro and Willie E. Cook, Jr., Washington, D. C., were on the brief for appellee.

Before FICKLING,* NEBEKER and MACK, Associate Judges.

PER CURIAM:

Appellant landlord, a District of Columbia government agency, appeals from a judgment rendered in favor of appellee tenant in a suit for possession of real estate. Presented for review is the question of the legal sufficiency of the notice to quit, which in turn requires the interpretation of a leasing agreement as to the date of commencement of the tenancy. It is on this date that, by virtue of D.C.Code 1973, § 45–902, the notice to quit must expire.[1]

The facts are not in dispute. By an instrument dated January 18, 1974 appellant leased to appellee a dwelling located at 302 K Street, Southeast, in the District of Columbia.[2] Paragraph 1 of the lease specified a monthly rental fee of $116 subject to an

---

* Associate Judge Fickling concurred in the result, but died before the entry of this opinion.

1. D.C.Code 1973, § 45–902 provides:

   A tenancy from month to month, or from quarter to quarter, may be terminated by a thirty days' notice in writing from the landlord to the tenant to quit, or by such a notice from the tenant to the landlord of his intention to quit, *said notice to expire, in either case, on the day of the month from which such tenancy commenced to run.* (Emphasis supplied.)

2. Appellant received the leasing functions (by virtue of Reorganization Plan No. 3 of 1975) of the National Capital Housing Authority (*see* Section 202(a) of the District of Columbia Self-Government and Governmental Reorganization

initial reduction at the discretion of the landlord. Accordingly, a reduction was agreed upon and its terms, as well as the terms of the tenancy, were set forth in paragraph 2 as follows:

> . . . [T]he first term of this lease shall commence on the 18th day and continue through the last day of January 1974, for the sum of $15.60 payable in advance. This lease shall be automatically renewed for successive terms of one month each at the rent of $36.00 per month, subject to adjustment as herein provided, payable in advance without demand at the designated management office on the FIRST day of each month.

Appellee was considerably delinquent in making regular rental payments and was substantially in arrears by May 1975.[3] Consequently, by a notice dated May 15, 1975, appellee was informed that she would have to vacate the premises. The notice of termination provided in pertinent part: "That the [appellant] hereby notifies you of the termination of your tenancy . . . this notice to expire on June 30, 1975 and you are required to vacate the premises on or before July 1, 1975." Appellee refused to vacate and this action for possession followed.

The trial judge directed a verdict in favor of appellee on the ground that the notice to quit was defective. In reaching its decision the court reasoned that pursuant to D.C.

Code 1973, § 45–902 and paragraph 2 of the lease agreement, the notice to quit should have expired on the 18th day of the month; the date, in the opinion of the trial court, from which the tenancy commenced to run.

The pivotal question for us to consider is whether paragraph 2 of the lease agreement provided for a month to month tenancy commencing January 18, 1974 or whether, as appellant urges, the first term of tenancy commenced on January 18, 1974 and expired on January 31, 1974; whereupon, a new tenancy automatically commenced and continued on a month to month basis.[4]

■ It is a settled principle that leases such as the one in question are construed precisely the same way as contracts. *Javins v. First National Realty Corporation,* 138 U.S.App.D.C. 369, 373, 428 F.2d 1071, 1075, *cert. denied,* 400 U.S. 925, 91 S.Ct. 186, 27 L.Ed.2d 185 (1970). In construing this particular lease the trial judge invoked the secondary rule of contract interpretation by resolving the ambiguity against the drafters. *See 1901 Wyoming Avenue Cooperative Association v. Lee,* D.C.App., 345 A.2d 456 (1975); *Cowal v. Hopkins,* D.C.App., 229 A.2d 452 (1967); *Klein v. Miles,* D.C.Mun. App., 35 A.2d 243 (1944). *See also* 4 Williston on Contracts § 621 (3d ed. 1961).[5]

■ However, as we have previously pointed out, this secondary standard of

---

Act, Pub.L. 93–198; 87 Stat. 774, December 24, 1973).

3. While the record does not reveal the exact amount of rent that was owed by appellee in May 1975, the complaint for possession alleges the sum of $181 covering the period from February 1975 through July 31, 1975. Moreover, it was stipulated at trial (December 5, 1975) that appellee's arrearage had increased to $260. (Tr. 4)

4. Appellee conceded at trial that if, by the terms of the agreement, a month to month tenancy commenced on the 1st of the month, the notice to quit would be sufficient. (Tr. 6–7).

The fact that the notice spoke to expiration on the 30th day of the month was not pressed below nor is it raised on appeal. Consequently,

we shall refrain from deciding whether it satisfies our holding in *Gordon v. Tino,* D.C.Mun. App., 50 A.2d 593 (1946); *cf. Young v. Baugh,* D.C.Mun.App., 35 A.2d 242 (1944); *Merritt v. Thompson,* 53 App.D.C. 233, 289 F. 631 (1923).

5. This is illustrated by the following remarks made by the trial judge:

All right. So from the standpoint of examining [the lease] and interpreting it basically there is an entitlement on the part of the Court to construe its term strictly as to the [appellant] as you would any other instrument drafted by the agency; is that correct?

. . . . .

That the strict interpretation rule would apply, particularly if there [are] any ambiguities. (Tr. 10)

strict interpretation against the drafter arises when "certain other rules [of contract interpretation] have failed to give the writing one definite meaning." *1901 Wyoming Avenue Cooperative Association v. Lee, supra* at 463 (footnote omitted). Among these "certain other rules" to be considered first are (1) the substantial intent of the parties entering into the agreement. 4 Williston on Contracts, *supra,* § 618; and (2) " 'what a reasonable person in the position of the parties would have thought [the agreement] meant.' " *1901 Wyoming Avenue Cooperative Association v. Lee, supra* at 461 (footnote omitted), citing *Minmar Builders, Inc. v. Beltway Excavators, Inc.,* D.C.App., 246 A.2d 784, 786 (1968).

■ As we read paragraph 2 of the lease we think it is evident that the parties intended to create two separate terms of tenancy—the first term of the tenancy expiring on January 31, 1974 with a new term automatically commencing on February 1, 1974 and continuing on a month to month basis. While this is a departure from the traditionally expressed tenancy, there are basic practical reasons why, in governmentally assisted housing, it is convenient for both tenant and landlord to have a tenancy commence, and coincide, with a payment date, on the first of every month; moreover, it would not be in the interest of either party to hold the premises vacant awaiting the first of the month. The trial court was aware of these factors, and while we share its view that this controversy could have been easily avoided by more artful drafting, we do not think the agreement unreasonably ambiguous.[6]

Appellee's reliance on our decision in *Ourisman Chevrolet, Inc. v. Zimmelman,* D.C. Mun.App., 91 A.2d 709 (1952), is misplaced. In that case we held that parties to an already existing lease agreement could make a parol change as to the rental payment date without changing the commencement date of the tenancy. In the instant case, however, there has not been a subsequent change to the existing lease. The terms of the tenancy and the rental payment date are set forth by the provisions of the agreement.

We hold that the notice to quit was sufficient and we therefore reverse the judgment.

*So ordered.*

---

6. In *Thorpe v. Housing Authority of the City of Durham,* 393 U.S. 268, 89 S.Ct. 518, 21 L.Ed.2d 474 (1969), the tenant of a federally assisted housing project entered into a lease agreement on November 11, 1964. A provision of the lease (similar to the instrument in question) stated "[t]his lease shall be automatically renewed for successive terms of one month each . . . ." *Id.* at 270 n. 1, 89 S.Ct. at 519. The lease also contained a provision for the landlord's termination of the tenancy requiring 15 days' notice "prior to the last day of the term." *Id.* at 270 n. 2, 89 S.Ct. at 520. Subsequently, the tenant was served with a notice to quit dated August 10, 1967. While the issue in this case was not one of the sufficiency of the notice to quit, the Court did not appear to have any difficulty in treating the last day of the month as the last day of one of the "automatically renewed successive term[s]."