**INTERCOUNTY CONSTRUCTION CORPORATION, Appellant,**

v.

**DISTRICT OF COLUMBIA, Appellee.**

**No. 80–1004.**

District of Columbia Court of Appeals.

Argued Sept. 3, 1981.

Decided March 15, 1982.

·Douglas L. Patin with whom Herman M. Braude, Washington, D. C., was on the briefs, for appellant.

Leo N. Gorman, Asst. Corp. Counsel, with whom Judith W. Rogers, Corp. Counsel, and Charles L. Reischel, Deputy Corp. Counsel, Washington, D. C., were on the brief, for appellee.

Before NEWMAN, Chief Judge, and NE-BEKER and MACK, Associate Judges.

MACK, Associate Judge:

In this contract dispute, Intercounty Construction Corporation appeals from an order of the Superior Court granting the District of Columbia's motion for summary judgment, denying Intercounty's motion for summary judgment and affirming the judgment of the Contract Appeals Board in favor of the District. *Appeal of Intercounty Construction Corp.*, CAB No. 500 (Jan. 30, 1979). Specifically, Intercounty argues that Paragraph 12(f) of the Special Provisions of the District's standard highway construction contract is ambiguous, that Intercounty's interpretation is reasonable, and, as such, that it is entitled to recover additional monies under the contract. We find that on this record summary judgment for appellee was improperly granted and we therefore reverse and remand.

Intercounty entered into a contract with the District in May 1974 for the construction of the H Street overpass. The contract contained the standard governmental construction projects changes clause, the pertinent section of which is as follows:

> Article 3. Changes.—The Contracting Officer may at any time, by written order, and without notice to the sureties, make changes in the drawings and/or specifications of this contract and within the general scope thereof. If such changes cause an increase or decrease in the cost of performing the work under this contract, or in the time required for its performance, an equitable adjustment shall be made and the contract shall be modified in writing accordingly. . . .

If the parties could not reach an "equitable adjustment" resort was to be made to other provisions of the contract. One such provision [Paragraph 12(f) of the Special Provisions] provided the method for calculating the rate at which the contractor or his subsidiary should be paid for the use of their equipment in the event of government requested contract changes. Such payment

will be based on an hourly rate derived by dividing the current appropriate monthly rate from the Associated Equipment Distributors' Manual by 176 hours.... The hourly rate shall include all repair costs, freight and transportation charges, fuel, lubricants, taxes, insurance and other incidentals. No additional allowance will be made for overhead and profit.

On September 12, 1974, the District notified Intercounty to proceed with a change to the contract and to relocate steam and air lines. Subsequently, a dispute arose between Intercounty and the District as to the amount to be paid to Intercounty for work performed by its subcontractor, John J. Wilson, Inc., with respect to the change. The District paid Intercounty $146,228.00. Wilson, however, claimed it was owed an additional $16,174.15, plus interest, for the use of its equipment in performing the change order and on September 19, 1975, Intercounty, on behalf of Wilson, requested the Contracting Officer for the District to render a final decision on its claim. The Contracting Officer denied Intercounty's claim ruling that payment was made in accordance with Paragraph 12(f) and represented an equitable adjustment for the work performed.

Intercounty appealed this decision to the Contract Appeals Board which affirmed, ruling, as a matter of law, that Paragraph 12(f) was not ambiguous, that the term "include" connoted a limitation, not an expansion and that the term "hourly rate" included "all repair costs, freight and transportation charges, fuel, lubricants, taxes, insurance and other incidentals [and that the appellant was] not entitled to additional compensation." *Appeal of Intercounty Construction Corp., supra* at 6, 10–11.

Eight months thereafter, Intercounty filed a complaint in the Superior Court seeking to reverse the Board's decision as erroneous as a matter of law. Both parties filed cross-motions for summary judgment and the court, without opinion, granted the

District's motion and entered the summary judgment from which the appellant appeals. *Intercounty Construction Corp. v. District of Columbia*, No. 15984–79 (July 9, 1980).

Superior Court Civil Rule 56(c) provides that summary judgment shall be granted if the materials submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

The crux of this controversy, from the legal standpoint, is whether the additional costs (as of repair, freight, etc.) enumerated in Paragraph 12(f) are included or excluded from the Associated Equipment Distributors' Manual-based hourly rate to be paid for contractor-owned equipment.[1] The appellant asserts that its subcontractor is entitled to the additional costs over and above the AED-based hourly rate while the District contends that the appellant's award is limited to the AED-based hourly rate. Thus, the appellant argues that the "based on" language of Paragraph 12(f) indicates that other charges will be added onto the AED hourly rate and that the provision's "included" language indicates an intent to expand upon the hourly rate and, therefore, allow for greater remuneration to contractors performing change orders. On the other hand, the District interprets "included" to mean confine or contain; in other words, that the AED hourly rate is to embrace repair costs, etc. while retaining its character as an hourly rate.[2]

At this level we are persuaded by the logic of appellant's argument. In our view, the most reasonable language interpretation, read narrowly from hindsight, is that the only additional costs which shall *not* be paid to a contractor pursuant to a change order are those for overhead and profit.

Clearly, if, as the District concludes, the costs of repair, freight and transportation, fuel, lubrication, taxes, insurance and other incidentals are to be excluded they would, or should, have been treated as were over-

1. The AED Manual is a construction equipment manual used by the industry to determine rental rates.

2. We do not rule on whether those phrases are expansive or restrictive.

head and allowance costs. In other words, that the drafters specifically excluded two types of costs from payment by stating "no additional allowance will be made for overhead and profit" leads inexorably to the conclusion that repair costs, etc., are not to be subsumed by the AED hourly rate but are to be paid to contractors performing change orders over and above the AED hourly rate. Any other interpretation would tend to leave Paragraph 12(f)'s "[n]o additional allowance" language useless, inexplicable, inoperative, meaningless or superfluous and, hence, should be rejected. *Ball State University v. United States*, 488 F.2d 1014, 1016 (Ct.Cl.1973). *See generally Moran v. Audette*, D.C.App., 217 A.2d 653 (1966). Therefore, as Paragraph 12(f) is now drafted, the AED based-rate does not include the costs of repair, etc. If the District intended to limit payment to the AED-based rate it could easily have done so and, exercising its legislative prerogative, could now redraft Paragraph 12(f) to reflect that intent more clearly.

Our analysis does not end here, however. While we view Intercounty's interpretation of Paragraph 12(f) as the more reasonable one, the court's ruling with respect to the grant of summary judgment deserves closer scrutiny.

■ The first step in contract interpretation is determining what a reasonable person in the position of the parties would have thought the disputed language meant. *District of Columbia Department of Housing and Community Development v. Pitts*, D.C. App., 370 A.2d 1377, 1380 (1977); *1901 Wyoming Avenue Cooperative Association v. Lee*, D.C.App., 345 A.2d 456, 461 (1975).

■ There are many prongs to the reasonableness determination. First, there is the presumption that the reasonable person knows all the circumstances surrounding the making of the contract. Secondly, the reasonable person is bound by all usages which either party knows or has reason to know. Thirdly, the reasonable person standard is applied both to the circumstances surrounding the contract and the course of conduct of the parties under the contract.

*1901 Wyoming Avenue Cooperative Association v. Lee, supra* at 461–62. Finally, the court should look to the intent of the parties entering into the agreement. *District of Columbia Department of Housing and Community Development v. Pitts, supra* at 1380. *See also* Restatement (Second) of Contracts § 230 (1932); 4 Williston on Contracts § 600 *et seq.* (3d ed. 1961).

■ If, however, after application of this rule of interpretation a contract and its terms are still not subject to "one definite meaning," *1901 Wyoming Avenue Cooperative Association v. Lee, supra* at 463, the ambiguities remaining in the contract will be "construed strongly against the drafter . . . ." *Id.* at 462; *Cowal v. Hopkins*, D.C. App., 229 A.2d 452 (1967); *McIntosh v. Group Health Association, Inc.*, D.C.Mun. App., 138 A.2d 496 (1958). *Accord, Blount Brothers Construction Co. v. United States*, 171 Ct.Cl. 478, 346 F.2d 962 (1965); *WPC Enterprises Inc. v. United States*, 323 F.2d 874 (Ct.Cl.1963); Restatement (Second) of Contracts § 236(d) (1932); 4 Williston on Contracts § 621 (3d ed. 1961); *cf. Beacon Construction Co. v. United States*, 314 F.2d 501 (Ct.Cl.1963) (government contract in question contained a provision warning that, before bidding, plain ambiguities in specifications and drawings were to be taken up with the Public Housing Administration).

The District contends, on appeal, that we should not reach the point of construing ambiguities against it because, Intercounty, as a "reasonable person" knew or should have known of the District's interpretation of the disputed language and, as such, could not have read the disputed language as it now claims. The District argues that Intercounty, while knowing of the District's interpretation, raised no objection to the contract language and entered into the contract intending to challenge the District's interpretation of Paragraph 12(f). It also contends that the District has interpreted Paragraph 12(f) in the same manner since its adoption in 1962 and that since that time Intercounty has entered into eight contracts containing Paragraph 12(f).

On the other hand, Intercounty contends that custom and usage must be considered and that the AED Manual, which states that a lessee bears the cost of fuel and lubricants and that rates do not include freight charges, taxes or insurance, should be relied upon for that determination. It further urges that since the District's interpretation does not take the AED definitions into account, its interpretation, no matter how long held, is not reasonable.

Both parties' contentions raise issues of material fact which were not fully developed in the record upon which the Superior Court issued its judgment. As such, the Superior Court erred in granting a summary judgment for the District. We, therefore, remand for a determination of whether Intercounty's interpretation was reasonable in light of the circumstances surrounding the contract, and, if so, whether Paragraph 12(f) should be construed against the District.

*Reversed and remanded for further proceedings in accordance with this opinion.*

NEBEKER, Associate Judge, dissenting:

I would reverse and remand this case to the trial court with instructions to enter judgment for appellant. The trial court and the Board correctly held that Paragraph 12(f) is not ambiguous; however, both erred as a matter of law when they interpreted the term "include" to exclude the costs and charges contained in Paragraph 12(f). Such an interpretation "violates the rule that all language of a contract should be given effect and no terms should be construed as meaningless." *Northwest Marine Iron Works v. United States,* 493 F.2d 652, 657 (Ct.Cl.1974). *See also Thanet Corp. v. United States,* 591 F.2d 629, 633 (Ct.Cl.1979); *State of Arizona v. United States,* 575 F.2d 855, 863 (Ct.Cl. 1978). The holding is also at variance with a multitude of cases which hold that the term "include" is expansionary, and not limiting. *See, e.g., Federal Land Bank v. Bismarck Lumber Co.,* 314 U.S. 95, 99–100, 62 S.Ct. 1, 3–4, 86 L.Ed. 65 (1941); *American Federation of Television and Radio Art-*

*ists v. NLRB,* 149 U.S.App.D.C. 272, 275, 462 F.2d 887, 890 (1972); 20A Words and Phrases 152–55 (1959).