**Steven RASTALL, et al.,
Appellants/Cross–
Appellees,**

v.

**CSX TRANSPORTATION, INC.,
Appellee/Cross–Appellant.**

**Nos. 94–CV–1343, 94–CV–1413.**

District of Columbia Court of Appeals.

Argued March 12, 1996.

Decided June 26, 1997.

Richard A. Allen, with whom Scott M. Zimmerman, Washington, DC, was on the brief, for appellants/cross-appellees.

Robert P. Watkins, with whom Nicole K. Seligman and John T. Parry and Philip J. Deutch, Washington, DC, were on the brief, for appellee/cross-appellant.

Before WAGNER, Chief Judge, and FARRELL and RUIZ, Associate Judges.

WAGNER, Chief Judge:

This appeal and cross-appeal arise out of a breach of contract action brought by a class of approximately 240 Canadian railroad workers (Canadian workers), who are represented by ten separate unions and who work or have worked for appellee/cross-appellant, CSX Transportation, Inc. (CSXT), in Canada.[1] The Canadian workers alleged that CSXT breached their collective bargaining agreements by paying them in Canadian dollars unadjusted for the differential in the exchange rate. They claimed that the terms "dollars" and "$", as used in their collective bargaining agreements, refer to U.S. dollars just as they did for CSXT's 32,000 other employees who were based in the United States. The trial court (Kollar–Kotelly, J.) denied the parties' cross-motions for summary judgment, concluding that the contractual terms, which could refer to the currency in both the United States and Canada and which govern workers in both countries, were ambiguous. Rejecting CSXT's argument that extrinsic evidence supported only one reasonable interpretation of the ambiguous contract terms, i.e., U.S. dollars for U.S.-based workers and Canadian dollars for workers based in Canada, and following the "law of the case" doctrine, the trial court (Graae, J.) denied its subsequent motion for summary judgment. After trial, a jury returned a verdict in favor of CSXT with respect to each of the unions except the ATDA. The jury found for ATDA in the amount of $447,705.13, plus prejudgment interest compounded at 6% of $105,581.03. The Canadian workers filed a motion for judgment notwithstanding the verdict, or in the alternative for a new trial, which the trial court denied.

The Canadian workers argue for reversal on the grounds that: (1) the verdict for CSXT is contrary to the unambiguous terms of the collective bargaining agreements; and (2) the trial court erred in admitting certain evidence. CSXT argues in its cross-appeal that: (1) the evidence was insufficient to support a verdict in favor of ATDA; and (2) the award of compound interest was improper. We conclude that: (1) the contract is ambiguous and that the jury's interpretation, which resulted in verdicts in favor of CSXT except as to ATDA's claim, and for ATDA, is supported by the record; (2) the award of compound interest, not provided for in the agreements, was error; and (3) any errors in the court's evidentiary rulings were harmless.

### I. Factual Background

The evidence at trial disclosed that various labor unions represented CSXT's employees

---

1. On February 15, 1994, the trial court certified the Canadian workers as a class consisting of "all persons, and in the case of deceased persons, their legal representatives, who have been employed by CSX Transportation, Inc. and its predecessors whose employment has been governed by collective bargaining agreements and who are, or have been, employed in positions based in Canada and paid in Canadian currency after February 17, 1989." Ten unions, which are generally divided by crafts, now represent CSXT's Canadian employees. The ten unions are: 1. The Transportation Communications International Union; 2. The Brotherhood of Locomotive Engineers; 3. The United Transportation Union; 4. The Railroad Yardmasters of America; 5. The Brotherhood of Railway Signalmen; 6. The International Maintenance of Way Employees; 7. The Brotherhood of Railway Carmen Division; 8. The American Railway & Airway Supervisors Association; 9. The American Train Dispatchers; and 10. The International Association of Machinist and Aerospace Workers. Although this group was certified as a class, it seems that the jury considered each union's claims separately because only one class of workers, The American Train Dispatchers Association (ATDA), prevailed on their claim. The verdict against the nine other unions is the subject of the main appeal. The verdict in favor of ATDA is the subject of the cross-appeal.

whether they were based in the United States or Canada.[2] A very small percentage of CSXT's employees, less than one-half of one per cent, are based in Canada. The terms of employment for unionized employees are set forth in collective bargaining agreements which were negotiated by the unions with CSXT and its predecessors. The agreements established wages and other benefits (*e.g.*, health, disability, expense reimbursements, and retirement). In these agreements, actual or percentage increases in wages are expressed in terms of "dollars" and "cents" and "$" and "¢." It is not stated in the agreements whether the references are to the currencies of Canada or the United States. All the agreements were negotiated and signed in the United States on behalf of employees who worked primarily in the United States.

Since at least 1947, U.S.-based employees have been paid in unadjusted U.S. dollars, and Canadian-based employees have been paid in unadjusted Canadian dollars. The Canadian workers have known of the pay practice since at least the 1960's, but none challenged the practice before 1977. The dollar values were reasonably equivalent between 1947 and 1977, although the value of Canadian dollars dropped as low as ninety-two cents of U.S. dollars during the period. After 1977, the value of the Canadian dollar experienced a decline. The Canadian dollar reached a low of seventy cents in U.S. dollars in 1986. By 1987, one of the Canadian workers, Timothy Gowdey, was earning approximately $34,500 in Canadian dollars, which was worth $11,200 less than his counterpart was receiving in the United States for performing the same work with the same seniority. The agreements provide a grievance procedure to challenge wages and other issues. Workers commenced filing grievances with respect to the wage issue in late 1986, but they were denied by CSXT on the basis of the longstanding practice. The unions did not bargain over the issue, although national bargaining occurred on wage issues in 1986–87 and 1991 and three arbitration boards upheld the pay practice in 1989 and 1990. Some of the U.S. union representatives told the Canadian workers that they did not agree with the merits of their grievances.

## II. *The Canadian Workers' Appeal*

### A. *Interpretation of the Contract*

The Canadian workers, in contending that summary judgment was erroneously denied them, argue that the jury's verdict in favor of CSXT is contrary to the unambiguous terms of the collective bargaining agreements and erroneous as a matter of law. They contend that the terms "dollar" and "$" can only mean U.S. dollars for all employees covered by the contracts, given the express terms and the circumstances surrounding the negotiation and execution of the agreements. CSXT contends that the contract is ambiguous and that the extrinsic evidence in the case contradicts the Canadian workers' position.

▮▮▮ The determination of whether a contract is ambiguous is a question of law, which this court reviews *de novo*. *Sacks v. Rothberg*, 569 A.2d 150, 154 (D.C.1990) (citing *Dodek v. CF 16 Corp.*, 537 A.2d 1086 (D.C.1988)). In reviewing a contract for ambiguity, we consider the face of the document, giving the language used its plain meaning. *Id.* (citing *Kass v. William Norwitz Co.*, 509 F.Supp. 618, 625 (D.D.C.1980)); *1010 Potomac Associates v. Grocery Manufacturers of Am., Inc.*, 485 A.2d 199, 205 (D.C.1984) (citing *Bolling Fed. Credit Union v. Cumis Ins. Soc'y, Inc.*, 475 A.2d 382, 385 (D.C.1984)). "Extrinsic evidence of the parties' subjective intent may be resorted to only if the [contract] is ambiguous." *Id.* at 205–06. However, "[t]he endeavor to ascertain what a reasonable person in the position of the parties would have thought the words of a contract meant applies whether the language is ambiguous or not." *Sagalyn v. Found. for Preservation of Historic Georgetown*, 691 A.2d 107, 112 n. 8 (D.C.1997) (citing *Potomac Associates, supra*, 485 A.2d at 205–06). In this context, a reasonable person is: (1) presumed to know all the circumstances surrounding the contract's making and (2) bound by usages of the terms which either party knows or has reason to know.

---

**2.** See note 1, *supra*.

*Intercounty Constr. Corp. v. District of Columbia*, 443 A.2d 29, 32 (D.C.1982) (citations omitted). "[T]he reasonable person standard is applied both to the circumstances surrounding the contract and the course of conduct of the parties under the contract." *Id.* (citing *1901 Wyoming Ave. Co–op. Ass'n v. Lee*, 345 A.2d 456, 461–62 (D.C.1975)).

In this case, the contracts were negotiated and signed in the United States primarily for employees based in the United States. The parties negotiating the agreements were aware that both U.S. and Canadian workers were covered by its terms and that the terms, "dollars" or "$" refer to the currencies of both countries. Other provisions provide for cost-of-living wage adjustments based expressly upon a U.S. cost-of-living index. Long-term custom and usage, or the pay practice in this case, was for Canadian workers to be paid in Canadian dollars and for U.S. workers to be paid in U.S. dollars. The negotiating parties had to be aware of this longstanding practice which was not challenged for many years. Such circumstances provided evidence of how the parties had in fact interpreted the ambiguous contract term during contract implementation. In short, although there were circumstances surrounding the making of the contract suggesting that the term "dollars" referred to U.S. currency, other circumstances pointed to the conclusion that Canadian employees were to be paid in Canadian dollars.

"Under the law of the District of Columbia, a contract is ambiguous when it is reasonably susceptible of different constructions or interpretations, or of two or more different meanings.... An ambiguity in a contract raises a genuine issue of material fact," which is for the factfinder to resolve. *Kass, supra* 509 F.Supp. at 623–24. (citations omitted) (applying D.C. law). In this case, given the ambiguity in the contract, it was for the factfinder to determine its meaning. *See id.* Therefore, we reject the Canadian workers' argument that the contract was unambiguous, entitling them to a judgment as a matter of law.

The general rule is that in interpreting an ambiguous contract, extrinsic evidence "may be admitted to explain the surrounding circumstances and the positions and actions of the parties at the time of contracting." *Rivers & Bryan, Inc. v. HBE Corp.*, 628 A.2d 631, 635 (D.C.1993). Such evidence supports the jury's verdict in favor of CSXT. CSXT offered testimony of an expert that in the railroad industry parties to a collective bargaining agreement subsequently develop practices that interpret ambiguous language or fill in areas that the agreements left unaddressed. It's experts also testified that past practices become a part of the agreement and cannot be changed without specific negotiations. The Canadian workers accepted the longstanding practice of payment in the currency of their country when it was in their interest to do so and even for some time thereafter. There was testimony that no union ever raised the issue during negotiations between 1973 and 1991, even after the Canadian dollar began to decline as against the U.S. dollar. The jury could accept CSXT's evidence in spite of some evidence in the record supportive of the Canadian workers' position. We find no basis to disturb the jury's verdict in favor of CSXT against the Canadian workers (excluding ATDA).

**B.** *Evidentiary Challenges*

The Canadian workers argue that the trial court erred in admitting the out-of-court opinions of two union officials based upon misrepresentations of CSXT's counsel. They contend that, contrary to the attorney's representation, two of CSXT'S witnesses who testified concerning the meaning of the contract terms, had not been involved in wage negotiations. Counsel for CSXT concedes that the representation made as to D.D. Lewis, General Chairman of the United Transportation Union (UTU) was a mistake because he did not talk directly to the president of the union, but only to the general counsel and others involved.

We review the trial court's ruling on evidentiary issues for an abuse of discretion. *Brown v. United States*, 567 A.2d 426, 427 (D.C.1989), *cert. denied*, 494 U.S. 1037, 110 S.Ct. 1497, 108 L.Ed.2d 632 (1990). Since

the court's ruling on the admission of the evidence rested on a faulty premise as to one of the witnesses, Mr. Lewis, the exercise of the court's discretion was not fully informed as to that witness. We are hampered in our review of the workers' claim because they have not identified specific testimony to which they object. The Canadian workers argue that the testimony of these witnesses was prejudicial because the jury verdict in favor of the American Train Dispatchers Association (ATDA), whose president, Robert J. Irvin, testified that his union did not intend to be paid in Canadian dollars, showed that the jury took into account the testimony of the two witnesses for CSXT that the unions agreed to be paid in Canadian dollars. As CSXT points out, however, the witnesses testified about the payment practices, but did not provide any opinion about the interpretation of the agreements. The challenged witnesses' testimony concerned the pay practice, the grievance procedure, and administration of collective bargaining agreements; they did not offer opinions on the intentions of the parties. Moreover, we are not persuaded that such opinions were conveyed to the jury by implication as the workers suggest. Therefore, we conclude that any error in the admission of the evidence was harmless and does not warrant a new trial.

 The Canadian workers argue that the trial court committed prejudicial error in admitting the opinion of another union official, D.D. Vance, which they claim was expressed in a letter used by CSXT to cross-examine plaintiff, Owen Medcraft.[3] Medcraft.testified, based on a letter that he had received from the president of The Transportation Communications International Union (TCIU) (formerly The Brotherhood of Railway, Airline and Steamship Clerks (BRAC's)), that his union did not understand his challenge to the pay practice. CSXT used the Vance letter in cross-examination of Medcraft in an attempt to show that the unions, in fact, understood, considered and rejected the workers' claims. The trial court

allowed the examination, concluding that Medcraft's testimony opened the door to the cross-examination and supported admission of the evidence to present the full picture. Under the theory of curative admissibility, in the interest of fairness, otherwise inadmissible evidence may be admitted to the extent necessary to remove prejudice when a party opens the door to its admission. *Lampkins v. United States,* 515 A.2d 428, 430 (D.C. 1986). Such a ruling will not be reversed on appeal absent a clear abuse of discretion. *Id.* (citations omitted). We find no clear abuse of discretion here in the trial court's ruling.[4] Moreover, the challenged evidence is not hearsay in that it was not offered for the truth of the matter asserted, *i.e.,* the correct contract interpretation, but rather to show that the unions considered the workers' claims and rejected them. *See United States v. Patrick,* 294 U.S.App. D.C. 393, 401, 959 F.2d 991, 1000 (1992).

### III. *CSXT's Cross–Appeal*

 CSXT argues that it is entitled to a judgment as a matter of law as to ATDA. It contends that the evidence was overwhelmingly in its favor, and substantially unrebutted. CSXT maintains that the testimony of the ATDA union president was insufficient to prove that in negotiating the contracts, the parties intended that all members of the ATDA be paid in U.S. currency. As previously pointed out, however, there was other substantial evidence on both sides. In addition, ATDA's president testified that he did not intend for the Canadian-based members of his union to be paid in Canadian dollars. Viewed in the light most favorable to ATDA, there was adequate evidence to support the jury's verdict. *See Lyons v. Barrazotto,* 667 A.2d 314, 324 (D.C.1995). The trial court need not agree with the decision of the jury; it need only find that there is more than a "mere scintilla" of evidence to support the verdict. *Rich v. District of Columbia,* 410 A.2d 528, 532 (D.C.1979). It is

---

3. The letter itself was not admitted into evidence.

4. In considering the workers' motion for new trial, the trial court expressed reservations about the correctness of its ruling on relevance and

hearsay grounds, but ruled that any error in the ruling was harmless, given all the other evidence in the case. We agree that even assuming error in the ruling, it was harmless.

for the jury to weigh the evidence and determine the facts. *Id.* at 535.

Finally, CSXT argues that the trial court erred in allowing the jury to consider and award compound interest. The Canadian workers sought prejudgment interest pursuant to D.C.Code §§ 15–108, 28–3302 (1995 Repl.Vol.). These statutes do not specify that compound interest may be awarded. Absent a contractual provision, prejudgment and judgment interest are not usually compounded. *Giant Food, Inc. v. Jack I. Bender & Sons,* 399 A.2d 1293, 1304 (D.C.1979). There was no contractual provision for it in this case. Therefore, we conclude that the trial court erred in submitting the issue to the jury.

For the foregoing reasons, we affirm the judgment in favor of CSXT and reverse the judgment insofar as it awards compound interest and remand the case to the trial court for the entry of an order allowing simple interest on the judgment in favor of ATDA, which we affirm.

*So ordered.*